UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT HUDSON,

              Plaintiff,

      -v-

COUNTY OF DUTCHESS, NEW YORK STATE
POLICE OFFICER MIANO, and NEW YORK
STATE POLICE OFFICER J. MARGENDAHL,

          Defendants.

Case No. 12-CV-5548 (KMK)

OPINION AND ORDER

Appearances:

Robert Hudson
Stanfordville, N.Y.
*Pro Se Plaintiff*

David Lewis Posner, Esq.
McCabe & Mack L.L.P.
Poughkeepsie, N.Y.
*Counsel for Defendant County of Duchess*

Daniel A. Schulze, Esq.
Office of the Attorney General of the State of New York
New York, N.Y.
*Counsel for Defendants Miano and Mergendahl*

KENNETH M. KARAS, District Judge:

      This case is rooted in a decades-old property dispute between Plaintiff Robert Hudson

("Hudson") and his neighbors, the Varneys, which dispute has already been the subject of

multiple state- and federal-court proceedings.  At various points throughout the course of the

proceedings before this Court, Plaintiff has named a total of 13 different individuals and entities

as Defendants.  However, the Court issued an Order dismissing ten of those Defendants, leaving

only Defendants County of Dutchess ("Dutchess County"), New York State Trooper Miano

("Trooper Miano"), and New York State Trooper Mergendahl ("Trooper Mergendahl").[1] Dutchess County and Troopers Miano and Mergendahl now move to dismiss certain claims asserted against them.  For the following reasons, Dutchess County's Motion to Dismiss is granted, while Troopers Miano and Mergendahl's Motion to Dismiss is granted in part and denied in part.

## I.  BACKGROUND

### A.  Factual Background

The following facts are taken from Plaintiff's Third Amended Complaint, which is lengthy, not a model of clarity, and includes allegations about events dating back to 1979. Indeed, many of the allegations appear to be completely unrelated to the causes of action that Plaintiff seeks to assert against the remaining Defendants.  (*See, e.g.,* Third Am. Compl. 5 ("I drove a truck with an eight foot by eight foot sign accusing [a Putnam County judge and attorney] of extortion, against me."); *id.* ("In 1984 and again in 1986 I ran for the office of the United States Congressman for the twenty first Congressional District N.Y.").)[2]  The Court will therefore describe only those facts that are pertinent to Defendants' Motions.

Plaintiff resides in the Town of Pine Plains, in Dutchess County, New York, on "twenty two and a half . . . acres," which Plaintiff describes as his "place of domicile" and his "home." (*Id.* at 6.)  Plaintiff "maintain[s] [seven] goats on this property to help [him] bring [his] estate

---

[1] Defendant Mergendahl's surname is incorrectly spelled as "Margendahl" on the docket. The Clerk of Court is respectfully requested to edit the docket accordingly.

[2] Plaintiff also states that, in furtherance of his campaign, he "went door to door and shook hands and spoke to citizens regarding [his] political position that [he] was against sodomy by homosexuals and Jews passing judgment on the Christian citizens of the United States." (Third Am. Compl. 5.)

into farming (grazing) condition." (*Id.*)  On June 24, 2010, Trooper Miano signed an

information accusing Plaintiff of criminal trespass in the third degree, in violation of New York

Penal Law § 140.10.[3]  (*See* Pl.'s Exs., at 2.)[4]  Specifically, the criminal trespass information that

Trooper Miano signed stated that, on June 24, 2010, Plaintiff "did drive his [vehicle] on the

property of Sebastian Varney ["Varney"] . . . in the Town of Pine Plains.  [Plaintiff] was notified

several times not to enter or drive on said property.  The property is clearly posted and fenced

in."  (Pl.'s Exs., at 2.)

On the same day, Trooper Miano also signed an information accusing Plaintiff of

criminal harassment in the second degree, in violation of New York Penal Law § 240.26, in

connection with the same events.[5]  (*See id.* at 3.)  Specifically, the criminal harassment

information that Trooper Miano signed stated that, on June 24, 2010, Plaintiff "did drive his

vehicle . . . on the property of . . . Varney and while doing so did yell out the window, 'What's

up young Varney.'  [Plaintiff] also swer[]ved at [Varney's] dog trying to strike the dog with his

vehicle.  [Plaintiff] was notified several times to stay off the property and the property is well

marked and fenced in."  (*Id.*)  The factual basis for both of the informations that Trooper Miano

---

[3] Section 140.10 provides in relevant part that "[a] person is guilty of criminal trespass in the third degree when he knowingly enters or remains unlawfully in a building or upon real property . . . which is fenced or otherwise enclosed in a manner designed to exclude intruders." N.Y. Penal Law § 140.10 (McKinney 2014).

[4] Plaintiff did not number the exhibits that he attached to his Third Amended Complaint. Instead, Plaintiff included an index that provides the pages at which each document appears. The Court will follow this convention, and refer to Plaintiff's exhibits as a single consecutively paginated document.

[5] Section 240.26 provides in relevant part that "[a] person is guilty of harassment in the second degree when, with intent to harass, annoy, or alarm another person . . . he or she engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose."  N.Y. Penal Law § 240.26 (McKinney 2014).

signed appears to have been the allegations contained in a deposition to which Varney swore at the Town of Pine Plains Criminal Court earlier that day. (*See id.* at 1.) Many details from Varney's deposition appear in the charging instruments sworn to by Trooper Miano. (*See id.* at 2–3.) In his deposition, Varney also requested an order of protection. (*See id.* at 1.)

Also on June 24, 2010, as a result of the foregoing events, Town of Pine Plains Justice Christie Acker ("Justice Acker") signed a temporary order of protection, ordering Plaintiff to stay away from Varney's home and business; to refrain from communications or any other contact with Varney; to refrain from various forms of harassment against Varney; to refrain from intentionally injuring or killing without justification Varney's dog; and, most importantly for the purposes of Plaintiff's Third Amended Complaint, to "[s]urrender any and all handguns, pistols, revolvers, rifles, shotguns and other firearms [that Plaintiff] owned or possessed" to the Dutchess County Sheriff's Office by 1:00 PM on June 25, 2010. (Pl.'s Exs., at 4.) Justice Acker specified that the order was to remain in effect until December 24, 2010. (*See id.*)[6]

Plaintiff was arrested on his property by Trooper Mergendahl and a second State Trooper on the same day that Justice Acker issued the order. (*See id.* at 19.) The next day, June 25, 2010, "the New York State Police took Plaintiff's rifles," even though the order "required Plaintiff to turn his rifles . . . over to the Dutchess County Sheriff." (Third Am. Compl. 7.) Plaintiff attached a June 25, 2010 receipt from the New York State Police for one Springfield and one Remington rifle as an exhibit to his Third Amended Complaint. (*See* Pl.'s Exs., at 5.) The receipt was signed by a New York State Trooper with the surname "Doncitek." (*Id.*)

---

[6] Plaintiff also alleges that on December 15, 2010, Justice Acker extended the protective order, although Plaintiff does not specify to what date it was extended. (*See* Pl.'s Third Am. Compl. 7.)

4

By October 18, 2010, criminal proceedings had commenced against Plaintiff in connection with the two charging instruments that Trooper Miano signed.  (*See* Pl.'s Exs., at 7.) On that date, Justice Acker granted the prosecutor's request for an adjournment, as well as his "application for a reduction of the misdemeanor Criminal Trespass 3rd to a violation of Trespass," and informed Plaintiff that "the matter [could] only proceed as a Bench Trial."  (*Id.*) However, before those criminal proceedings reached a resolution, another incident involving Plaintiff and Varney occurred.  On January 28, 2011, Varney swore to a second deposition, in which he stated that he "witnessed a vehicle" cross onto his property and "proceed through the back portion of [his] property," and that "the operator" had been "shouting as he drove."  (*Id.* at 9.)  Varney "believe[d] without doubt [that] the operator [was] [Plaintiff,] as [Plaintiff] [had] exhibited this course of action on numerous occasions."  (*Id.*)  Varney stated that he had "an order of protection in place," and "would like to have [Plaintiff] arrested."  (*Id.*)

On the same day that Varney swore to this deposition, apparently on the basis of the allegations contained therein, Trooper Mergendahl signed an information accusing Plaintiff of criminal trespass, in violation of New York Penal Law § 140.05.[7]  (*See id.* at 10.)  Specifically, the criminal trespass information that Trooper Mergendahl signed alleged that, on January 28, 2011, Plaintiff "did intentionally, knowingly and unlawfully drive his ATV onto [Varney's] property."  (*Id.*)  On the same day, Trooper Mergendahl also signed an information accusing Plaintiff of criminal contempt in the second degree, in violation of New York Penal

---

[7] Section 140.05 provides that "[a] person is guilty of trespass when he knowingly enters or remains unlawfully in or upon premises."  N.Y. Penal Law § 140.05 (McKinney 2014).

Law § 215.50.[8]  (*See id.* at 11.)  Specifically, the criminal contempt information that Mergendahl

signed alleged that, on January 28, 2011, Plaintiff "did intentionally, knowingly and unlawfully

trespass onto . . . the residence of [Varney]," and that "[a]n active order of protection issued by

the Town of Pine Plains Court refrain[ed] [Plaintiff] from being near the home of [Varney]."

(Pl.'s Exs., at 11.)

Plaintiff alleges that, on either January 27 or January 29, 2011, and again on February 3,

2011, two New York State Troopers, including Trooper Mergendahl, entered his property while

he was not there.  (*See* Pl.'s Third Am. Compl. 9; Pl.'s Exs., at 15–29.)[9]  In response to an order

that the Court issued pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997), on February

28, 2013, (*see* Dkt. No. 57), the Office of the Attorney General of the State of New York

informed the Court on April 8, 2013 that, although it had "not been able to locate any records

that identif[ied] the second officer," "Trooper Miano believe[d] that he may have been the

second officer accompanying Trooper Mergendahl,"  (Dkt. No. 59).

Plaintiff claims that "[w]hen . . . Trooper [Mergendahl] came to [his] home, [his] home

was broken into and 300 pounds of [his] sheep and goat feed were dumped onto the top of the

---

[8] Section 215.50 provides in relevant part that "[a] person is guilty of criminal contempt in the second degree when he . . . [i]ntentionally fail[s] to obey any mandate, process or notice, issued pursuant to articles sixteen, seventeen, eighteen, or eighteen-a of the judiciary law, or to rules adopted pursuant to any such statute or to any special statute establishing commissioners of jurors and prescribing their duties or who refuses to be sworn as provided therein."  N.Y. Penal Law § 215.50 (McKinney 2014).

[9] In Plaintiff's Third Amended Complaint, he alleges that Trooper Mergendahl stated under oath that "he had come to Plaintiff's property on the Saturday after January 28, 2011 . . . ." (Pl.'s Third Am. Compl. 9.)  However, in at least one Freedom of Information Law request that Plaintiff submitted to the New York State Police, he asked for information "pertaining to February 3, 2011 entry and the January 27, 2011 entry by the New York State Police upon the Property of Robert Hudson."  (Pl.'s Exs., at 15.)

snow."  (Third Am. Compl. 9; *see also id.* at 16 ("After N.Y.S. State Police Officer Mergendahl came to [P]laintiff[']s property [his] home was broken into.").)  Plaintiff alleges that he "carried sheep and goat feed, to keep the 12 goats that [he] had . . . alive."  (*Id.* at 16.)  Plaintiff also claims that "[a]fter [his] home was broken into [he] moved his important papers to his car," fearing that if he did not, "the papers in [his] home would be taken."  (*Id.*)  Additionally, Plaintiff alleges that "[t]he regulator on [his] car window was broken and [t]he N.Y.S. Secretary of State decision against the N.Y.S. Police and other papers were taken from [his] car."  (*Id.* at 16–17.)

On February 14, 2011, Plaintiff submitted the first of several requests to the New York State Police under New York State's Freedom of Information Law, N.Y. Pub. Off. Law § 84 *et seq.* ("FOIL"), for information pertaining to these alleged entries.  (Pl.'s Exs., at 15.) Specifically, he requested "any information concerning any inquiry of [Plaintiff] conducted by the New York State Police and any warrants or reasons, that may have been used to gain entry into [his] home or any other inquir[i]es that have ever been undertaken concerning [Plaintiff]." (*Id.*)  On February 17, 2011, Captain Michael A. Jankowiak ("Captain Jankowiak") responded to Plaintiff's letter, writing that he had "forwarded [Plaintiff's] letter to Captain Scott Brown" ("Captain Brown"), and that Captain Brown would "ensure [that] a supervisory member of his command review[ed] [the] matter and advise[d] [Plaintiff] of the final determination." (*Id.* at 17.)

Approximately two weeks later, on March 2, 2011, Plaintiff was arrested by Trooper Mergendahl and his partner, (*id.* at 19), and released on bail the following day, (*id.* at 12), in connection with the trespass and criminal contempt informations that Trooper Mergendahl signed.  On the same day that Plaintiff was released, Captain Laurie M. Wagner ("Captain

Wagner"), Records Access Officer at the Central Records Bureau for the New York State Police, sent Plaintiff a letter in which she wrote that "the record located responsive to [Plantiff's] [FOIL] request concern[ed] a case that [was] pending adjudication," and that Plaintiff's request was "therefore . . . denied." (*Id.* at 18.) Captain Wagner also informed Plaintiff that the record that he had requested "was compiled for law enforcement purposes," and that its disclosure "would interfere with judicial proceedings." (*Id.*)

Plaintiff appealed this decision in a March 15, 2011 letter addressed to "[t]he New York State Police . . . Records Appeal Officer," in which Plaintiff asked the officer to "[p]lease allow [him] access to the documents compiled against [him] and [his] home and [his] land by the New York State Police." (*Id.* at 19–20.) On March 21, 2011, Lieutenant Colonel Terence P. O'Mara ("Lt. Colonel O'Mara"), Assistant Deputy Superintendent for Administration for the New York State Police, wrote to Plaintiff that he had "reviewed [Plaintiff's] appeal and determined that the record located responsive to [Plaintiff's] request concern[ed] a case that [was] pending adjudication"; that "[d]isclosure of this record, which was compiled for law enforcement purposes, would interfere with judicial proceedings"; and that Plaintiff's appeal was therefore denied. (*Id.* at 22.) Plaintiff appealed this denial as well, in an April 6, 2011 letter addressed to the "N.Y.S. Secretary of State—N.Y.S. Freedom of Information Law (FOIL) Officer Director." (*Id.* at 23.)

After a bench trial, Justice Acker found Plaintiff guilty of the trespass charge, but not guilty of the harassment charge, both relating to the June 24, 2010 incident. (*See id.* at 8.) Following this verdict, on May 9, 2011, Justice Acker cancelled and recalled the protective order that she issued on June 24, 2010, and that she extended on December 15, 2010. (*See id.* at 14.) Then, on July 19, 2011, a jury acquitted Plaintiff of the charges stemming from the trespass and

8

contempt charges that Trooper Mergendahl initiated in January 2011.  (*See id.* at 13; Pl.'s Third

Am. Compl. 9 ("In the second trial, the jury found [the] Plaintiff innocent of the N.Y.S. Trooper

[Mergendahl] second set of charges of Trespass and Violation of the Judge[']s Order of

Protection.").)

 After Plaintiff's acquittal, he persisted with his FOIL request.  At some point before

November 11, 2011, Plaintiff renewed his request for records "pertaining to the entry of the New

York State Police into [his] home or entry upon [his] real property . . . in early February 2011,"

in a letter addressed to the New York State Police "Records Access Officer," in which he

described his prior efforts to obtain the information that he was seeking.  (*See* Pl.'s Exs., at 24.)

In this letter, Plaintiff stated that the Records Access Office had previously denied his request

because it "concern[ed] a case that [was] pending adjudication," but that by the time he sent his

November 11, 2011 letter, "all judicial proceedings against [Plaintiff] [had] been dismissed and

[Plaintiff] [had] been found innocent of all criminal charges."  (*Id.*)  On November 21, 2011,

Captain Wagner answered, in a letter in which she informed Plaintiff that his request was under

review, and that a written response would be sent to him approximately 20 days from the date of

her letter.  (*Id.* at 25.)  On December 19, 2011, Plaintiff sent another letter to the New York State

Police, addressed to its "Appeals Officer," in which he wrote that, despite Captain Wagner's

assurances in her November 21, 2011 letter, he had still "not received a response from the

records access officer."  (*Id.* at 26.)

 On February 14, 2012, Plaintiff wrote yet another letter to the New York State Police,

this time requesting the return of his rifles.  (*Id.* at 27.)  Plaintiff emphasized that "[a]ll criminal

charges [against him had] been dismissed," cited the Second Amendment to the United States

Constitution, and quoted from *Razzano v. County of Nassau*, 765 F. Supp. 2d 176 (E.D.N.Y.

2011), a case in which the court found that "persons whose longarms are seized by Nassau County are entitled to a prompt post-deprivation hearing," and that because the plaintiff in that case had "not [been] offered [that] type of hearing, Nassau County [had] violated [the plaintiff's] Fourteenth Amendment due process rights." *Id.* at 190–91.  Specifically, Plaintiff paraphrased the following passage from *Razzano*:

> [T]he right to bear arms is enshrined in the Second Amendment of the United States Constitution, and although this right is by no means unlimited, ownership of guns by individuals legally entitled to those guns is a basic right.  A prompt due process hearing is likely to limit the unfair curtailment of this right.

*Id.* at 190.

On February 17, 2012, Captain Jankowiak wrote to Plaintiff that he had "forwarded [Plaintiff's] letter to [Captain Brown]," who would "ensure [that] a supervisory member of his command review[ed] [the] matter and advise[d] [Plaintiff] of the final determination."  (Pl.'s Exs., at 29.)  Plaintiff alleges that, as of March 22, 2013, the date on which he filed his Third Amended Complaint, there has never been a post-deprivation hearing regarding the confiscation of his rifles, and that his "rifles have never been returned."  (Pl.'s Third Am. Compl. 7.)

B.  Procedural Background

Plaintiff filed a Complaint on July 18, 2012, naming Justice Acker, the Town of Pine Plains, Dutchess County, the Dutchess County Treasurer, Trooper Miano, Trooper Mergendahl, the Attorney General of New York, the Department of State of New York State, Premier Court Reporters, and Schmieder and Miester, Inc., as Defendants.  (*See* Dkt. No. 1.)  Plaintiff's case was reassigned to the Court on August 16, 2012.  (*See* Dkt. No. 7.)  On August 31, 2012, Plaintiff filed an Amended Complaint.  (*See* Dkt. No. 14.)

On September 12, 2012, the Court issued an Order directing Plaintiff to amend his Complaint. (*See* Dkt. No. 12.) The Court "liberally construe[d] the Complaint as alleging constitutional violations, under 42 U.S.C. § 1983, arising out of the seizure of [Plaintiff's] rifles, his arrest, and prosecution." (*Id.*) In regard to Plaintiff's claim that "his rifles were seized from him, and [that] he [had] been unable to recover them in violation of the Second and Fourteenth Amendments," the Court noted that Plaintiff had not "provide[d] sufficient facts regarding his claims regarding the firearms," and directed Plaintiff to "amend his Complaint to explain whether he had the requisite license or permit to possess the weapons, whether there was any process to recover them, and if there was a process, how it was deficient." (*Id.*) The Court also stated that, "[t]o the extent Plaintiff [was] alleging that the protective order that allegedly required surrender of the weapons . . . independently violated his Second Amendment rights, he [was] directed to clarify those allegations." (*Id.*)

The Court also put Plaintiff on notice that, if he did not remedy certain other deficiencies that the Court identified in its Order, his claims against Justice Acker would be dismissed on the grounds of judicial immunity; that his claims against the Town of Pine Plains, Dutchess County, and the Dutchess County Treasurer would be dismissed in light of *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for failure to allege constitutional violations committed pursuant to an official policy, custom, or practice; that his claims against the Attorney General of New York and the Department of State of New York State would be dismissed on the basis of the immunity from claims for damages in federal court that the Eleventh Amendment to the United States Constitution provides to states and their agencies, as well as on the basis that a state and its agencies are not "persons" within the meaning of 42 U.S.C. § 1983, and therefore may not be sued under the statute; that his claims against Premier Court Reporters and

11

Schmieder and Miester, Inc., would be dismissed because a litigant claiming that his due process rights have been violated must allege that the challenged conduct is attributable to the government, and Plaintiff had not alleged the existence of state action with respect to those Defendants; and that, insofar as Plaintiff was attempting to challenge his conviction on the basis of double jeopardy or the right to trial by jury, or on the basis that his criminal proceedings were otherwise unfair, he was required to first exhaust such claims through the state-court appeals process. (*Id.*)

As to the claims that the Court construed Plaintiff's Complaint to be asserting against Troopers Miano and Mergendahl, the Court found that, to the extent that Plaintiff was asserting a claim against them based on their alleged violation of the Fourth Amendment in connection with their alleged entries onto his property, Plaintiff was not required to "allege more at [that] point." (*Id.*) However, the Court also stated that, "to the extent Plaintiff [was] asserting a false arrest claim [against them], he should know that he" was not permitted to "bring any claims that would implicate the validity of his conviction or sentence unless he [had] shown that his state court conviction [had] been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." (*Id.* (internal quotation marks omitted).) In support of this proposition, the Court cited to *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994), as well as *Kevilly v. New York*, 410 F. App'x 371, 374 (2d Cir. 2010), a Second Circuit decision interpreting *Heck*. (*See id.*)

On October 10, 2012, Plaintiff filed a Second Amended Complaint, in which he named three private law firms—Gambeski and Frum, McCabe and Mack, and Geller and Klein P.C.—as additional Defendants. (*See* Dkt. No. 23.) On November 1, 2012, the Court issued an

12

Order in which it considered whether Plaintiff's Amended Complaint adequately addressed the deficiencies that it identified in its September 12, 2012 Order, and whether the addition of the three law-firm Defendants presented any new problems.  (*See* Dkt. No. 27.)  The Court found that Plaintiff had not addressed those deficiencies as to Justice Acker, the Town of Pine Plains, the Dutchess County Treasurer, the Attorney General of New York, the Department of State of New York State, Premier Court Reporters, and Schmieder and Miester, Inc., and accordingly dismissed all claims that Plaintiff was attempting to assert against those Defendants.  (*See id.*) The Court also dismissed the claims that Plaintiff was attempting to assert against the three law-firm Defendants, as Plaintiff had "not made any allegations whatsoever against [them], much less described how their conduct [was] attributable to the government."  (*See id.*)

However, in relation to Plaintiff's claims regarding the seizure of his rifles, the Court found that he had "provide[d] additional details regarding [their] seizure . . . , the licensing and permit requirements in Dutchess County, and his attempts to recover[] the weapons," and that as a result, "Plaintiff's claims regarding the seizure of his rifles [could] proceed," without prejudice to Defendants' right to file dispositive motions at a later date.  (*Id.*)  The Court also found that Plaintiff's claims regarding Troopers Miano and Mergendahl's alleged violation of the Fourth Amendment in connection with their alleged entries onto his property could also proceed, again without prejudice to Defendants' right to file dispositive motions at a later date.  (*See id.*)

But the Court also noted that its previous Order had explained that Plaintiff was not permitted to bring a false-arrest claim or any other claim that would implicate the validity of his conviction or sentence, unless he had shown that his state court conviction had been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas

corpus.  (*See id.*)  Because Plaintiff had "not address[ed] this point in his Amended Complaint,"

the Court held that, "[t]o the extent that the Amended Complaint [could] be construed to allege a

false arrest claim against [Trooper] Miano and [Trooper] Mergendahl, that claim [was] . . .

dismissed."  (*Id.*)  Lastly, the Court found that, although Plaintiff had sought to maintain his

claims against Dutchess County in his Amended Complaint, he had still failed to "allege any

injury from a policy, custom, or practice" as required by *Monell*, and that, if Plaintiff failed to

allege such injury in a subsequent version of his Complaint, "Dutchess County [would] be

dismissed as a Defendant."  (*Id.*)

On November 28, 2012, Plaintiff filed a Re-Amended Second Amended Complaint.  (*See*

Dkt. No. 44.)  Plaintiff then filed a Third Amended Complaint on March 22, 2013, the version of

his Complaint to which the instant Motions relate, in which the only Defendants that he names

are Dutchess County and Troopers Miano and Mergendahl.  (*See* Dkt. No. 58.)  On August 9,

2013, Dutchess County filed a Motion to Dismiss any claims asserted against it therein.  (*See*

Dkt. No. 70.)  One week later, on August 16, 2013, Troopers Miano and Mergendahl filed a

Motion to Dismiss some, but not all, of the claims asserted against them.  (*See* Dkt. No. 77.)

## II.  DISCUSSION

### A.  Standard of Review

Defendants move to dismiss certain claims asserted against them in Plaintiff's Third

Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  "While a

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, internal quotation

marks, and alterations omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions

devoid of further factual enhancement."  *Id.* (internal quotation marks and alterations omitted).

Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the

speculative level."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated

adequately, it may be supported by showing any set of facts consistent with the allegations in the

complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that

is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the

line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556

U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a

context-specific task that requires the reviewing court to draw on its judicial experience and

common sense.  But where the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the

pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting

Fed.R.Civ.P. 8(a)(2)));  *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the

hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of

discovery for a plaintiff armed with nothing more than conclusions.").

 "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the

factual allegations contained in the complaint."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per

curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the

sufficiency of a complaint we accept as true all factual allegations . . . ." (internal quotation

marks omitted)); *Aegis Ins. Servs., Inc. v. 7 World Trade Co.*, 737 F.3d 166, 176 (2d Cir. 2013)

("In reviewing a dismissal pursuant to Rule 12(b)(6), we . . . accept all factual allegations in the complaint as true . . . ." (internal quotation marks and alterations omitted)).  Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n ruling on a 12(b)(6) motion, . . . a court may consider the complaint[,] . . . any written instrument attached to the complaint as an exhibit[,] or any statements or documents incorporated in it by reference," as well as "matters of which judicial notice may be taken, and documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 44 n. 1 (2d Cir. 2014) (citation, internal quotation marks, and some alterations omitted); *see also Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) ("In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." (internal quotation marks omitted)); *Hendrix v. City of New York*, No. 12–CV–5011, 2013 WL 6835168, at *2 (E.D.N.Y. Dec. 20, 2013) (same).

Because Plaintiff proceeds pro se, the Court must "construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted); *see also Farzan v. Wells Fargo Bank, N.A.*, No. 12-CV-1217, 2013 WL 6231615, at *12 (S.D.N.Y. Dec. 2, 2013) (same).  However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga*

*Cnty.*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (emphasis and internal quotation marks removed)).

    B.  Analysis

        1.  Dutchess County's Motion to Dismiss

Dutchess County argues that any claims Plaintiff is attempting to assert against it should be dismissed, as Plaintiff's Third Amended Complaint "alleges almost nothing against Dutchess County and what it does allege does not set forth a viable *Monell* claim."  (Dutchess County Mem. 2.)  Specifically, Dutchess County claims that the only allegations in Plaintiff's Third Amended Complaint that can possibly be construed as relating to Dutchess County are those that Plaintiff makes in regard to (1) allegedly improper conduct by the assistant district attorney who prosecuted Plaintiff in his trespass and harassment bench trial, (*see* Third Am. Compl. 8 ("The Dutchess County [assistant district attorney] suborn[ed] the witness Varney, telling the witness Varney to lie under oath, to change the . . . testimony [that] [Varney] had just given."); (2) the Dutchess County clerk's alleged refusal to accept a petition for registration of title that Plaintiff submitted in 1981, (*see id.* at 9 ("[T]he Clerk of Dutchess County wrote [that] he [would] not [accept] the petition without a title search . . . ."); and (3) Plaintiff's inability to obtain various Dutchess County tax maps he sought through FOIL requests and other means, (*see, e.g., id.* at 10–11 ("Plaintiff made a (FOIL) request for the common law road relating to Plaintiff's property to the Dutchess County Attorney, records Appeal Officer who responded in a letter dated February 16, 2007 stating, 'such easements are not shown on tax maps unless they serve multiple parcels'"); *id.* at 11 ("All Plaintiff's Dutchess County 6770 and 6670 tax maps before 1979 are destroyed or altered or denied access to from the Dutchess County Treasurer, Clerk and

[Director] of Real Property Services.").  (*See* Dutchess County Mem. 5–6.)

"Under the standards of *Monell v. Department of Social Services*, 436 U.S. 658 . . .

(1978), a municipality can be held liable under Section 1983 if the deprivation of the plaintiff's

rights under federal law is caused by a governmental custom, policy, or usage of the

municipality."  *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *see also Hunter v.

City of New York*, — F. Supp. 2d —, 2014 WL 3894339, at *9 (E.D.N.Y. Aug. 11, 2014) ("In

order to sustain a claim for relief pursuant to § 1983 against a municipal defendant, a plaintiff

must show the existence of an official policy or custom that caused injury and a direct causal

connection between that policy or custom and the deprivation of a constitutional right." (citing

*Monell*, 436 U.S. at 694–95)).  But "[a]bsent such a custom, policy, or usage, a municipality

cannot be held liable on a *respondeat superior* basis for the tort of its employee."  *Jones*, 691

F.3d at 80; *see also Dillon v. Blake*, No. 14-CV-2416, 2014 WL 1894316, at *2 (E.D.N.Y. May

12, 2014) ("Absent a showing of a custom, policy, or usage, a municipality cannot be held liable

for the tort of its employee on the basis of respondeat superior.").

"The Supreme Court has held that '[p]roof of a single incident of unconstitutional

activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes

proof that it was caused by an existing, unconstitutional municipal policy, which policy can be

attributed to a municipal policymaker.'"  *Giscombe v. N.Y.C. Dep't of Educ.*, No. 12-CV-464,

2014 WL 3974582, at *8 (S.D.N.Y. Aug. 12, 2014) (alterations in original) (quoting *City of

Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985)).  In other words, although a "single

incident involving [an] employee below the policymaking level generally will not suffice to

support [an] inference of a municipal custom or policy," *Vann v. City of New York*, 72 F.3d

1040, 1050 (2d Cir. 1995) (describing the Supreme Court's holding in *Tuttle*), "[s]o long as the

single challenged act was the decision of a municipal policymaker, the municipality [can] be

held liable," *Walker v. City of New York*, 974 F.2d 293, 296 (2d Cir. 1992) (describing the

Supreme Court's holding in *Pembaur v. Cincinnati*, 475 U.S. 469, 480 (1986)).  *See also*

*Reynolds v. Giuliani*, 506 F.3d 183, 207 (2d Cir. 2007) (noting that, to make out a claim against

a local governmental unit under 42 U.S.C. § 1983, a plaintiff generally must prove that an

alleged violation "occurred as a result of a governmental policy rather than as a result of isolated

misconduct by a single actor" (internal quotation marks and alterations omitted)); *Pignone v.*

*Vill. of Pelham Manor*, No. 10-CV-2589, 2014 WL 929805, at *3 (S.D.N.Y. Mar. 6, 2014)

("Even one act by a municipal policymaker may constitute a municipal policy, so long as that

policymaker possessed final authority to establish municipal policy in the area at issue." (internal

quotation marks omitted)); *Canzoneri v. Inc. Vill. of Rockville Ctr.*, 986 F. Supp. 2d 194, 204

(E.D.N.Y. 2013) ("It is well settled that municipal liability may be established based on the

single acts of a municipal official with final policymaking authority." (internal quotation marks

omitted)).  "The matter of whether a given official is a municipal policymaker is a question of

law," *Bliven v. Hunt*, 579 F.3d 204, 214 (2d Cir. 2009), "which is to be answered on the basis of

state law," *Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000).

As to the first two categories of allegations that Plaintiff makes against Dutchess County,

regarding the assistant district attorney's alleged misconduct and the clerk's alleged refusal to

accept a petition for registration of title, Plaintiff's allegations are confined to single acts of

alleged misconduct.  The question thus becomes whether either the assistant district attorney or

the clerk can be considered a municipal policymaker under *Monell* for the purposes of

this Action.

It appears as though the assistant district attorney cannot.  "The case law in [the Second] Circuit has often determined that ADAs are not policymakers for purposes of municipal liability."  *Conte v. Cnty. of Nassau*, No. 06-CV-4746, 2010 WL 3924677, at *29 (E.D.N.Y. Sept. 30, 2010) (collecting cases); *see also Weir v. City of New York*, No. 05-CV-9268, 2008 WL 3363129, at *7 (S.D.N.Y. Aug. 11, 2008) (finding that two assistant district attorneys were not "policymakers" for the purposes of *Monell*); *Feerick v. Sudolnick*, 816 F. Supp. 879, 886 (S.D.N.Y. 1993) (dismissing claims against two assistant district attorneys because they were not "municipal policymakers," but merely "subordinates"), *aff'd*, 2 F.3d 403 (2d Cir. 1993).  In fact, "some courts within [the Second] Circuit have determined" that ADAs are not policymakers "as a matter of law," "by virtue of their position and title."  *Conte*, 2010 WL 3924677, at *30. However, other courts have "suggest[ed] that the question of whether an ADA may be considered a policymaker for the purposes of a municipal liability claim depends on whether [the] ADA has supervisory authority."  *Id.* at *29.  But those other courts have also emphasized that "[a]ctivities such as negotiating plea agreements, scheduling hearings, and filing affirmations in support of writs are typically actions of assistant district attorneys undertaken in the prosecution of a criminal case," and therefore, "[s]uch actions cannot be said to represent the actions of a policymaker responsible for a delineated policy that caused a constitutional deprivation," as "[t]o hold otherwise would treat too closely to holding the municipality liable on a theory of *respondeat superior*."  *Peterson v. Tomaselli*, 469 F. Supp. 2d 146, 169–70 (S.D.N.Y. 2007); *see also Velasquez v. City of New York*, No. 08-CV-8478, 2012 WL 232432, at *6 (S.D.N.Y. Jan. 25, 2012) (holding that an ADA's decision "to apply for a search warrant falls into this category"); *DeJean v. Cnty. of Nassau*, No. 06-CV-6317, 2008 WL 111187, at *4

20

(E.D.N.Y. Jan. 8, 2008) (holding that an ADA's decision to "declin[e] to prosecute [the] plaintiff's misdemeanor complaints" was not "undertaken in any supervisory capacity").

Here, the only allegedly wrongful conduct in which Plaintiff claims the assistant district attorney engaged occurred in the context of the assistant district attorney's prosecution of Plaintiff.  (*See* Third Am. Compl. 8 ("The Dutchess County [assistant district attorney] suborn[ed] the witness Varney, telling the witness Varney to lie under oath, to change the . . . testimony [that] [Varney] had just given.").)  Put simply, the complained-of conduct was "action[] . . . undertaken in the prosecution of a criminal case," which "cannot be said to represent the actions of a policymaker responsible for a delineated policy that caused a constitutional deprivation."  *Peterson*, 469 F. Supp. 2d at 169–70.  What is more, "Plaintiff has not [even] alleged that [the assistant district attorney] had any policymaking role in the district attorney's office."  *DeJean*, 2008 WL 111187, at *4.  Accordingly, Plaintiff's claim against Dutchess County related to the assistant district attorney's alleged conduct is dismissed.

Whether the clerk can be considered a municipal policymaker under *Monell* is a more difficult question, mostly because Plaintiff has not provided the Court with any information regarding the clerk's job responsibilities, or the capacity in which the clerk allegedly refused to accept his petition for registration of title.  But the Court need not reach that question, because Plaintiff's claim is clearly time barred.

"Section 1983 does not provide a specific statute of limitations.  Thus, courts apply the statute of limitations for personal injury actions under state law.  Section 1983 actions filed in New York are therefore subject to a three-year statute of limitations."  *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) (citations omitted); *see also Ruiz v. Suffolk Cnty. Sheriff's Dep't*, No. 03-CV-3545, 2008 WL 4516222, at *2 (E.D.N.Y. Oct. 2, 2008) (applying the same three-

21

year statute of limitations to a Section 1983 claim predicated on a *Monell* theory of liability);

*Conteh v. City of New York*, No. 00-CV-5787, 2001 WL 736783, at \*2 (S.D.N.Y. June 28, 2001)

(same).  "Although state law provides the statute of limitations period, federal law determines

when § 1983 claims accrue.  Under federal law, a § 1983 claim accrues when the plaintiff knows

or has reason to know of the injury which is the basis of his action."  *Houston v. Cotter*, No. 07-

CV-3256, 2014 WL 1246067, at \*5 (E.D.N.Y. Mar. 27, 2014) (citation and internal quotation

marks omitted) (quoting *Pearl v. City of Long Beach*, 296 F.3d 76, 80, 85 (2d Cir. 2002)); *see*

*also Hogan*, 738 F.3d at 518 (same).

Plaintiff asserts that he submitted his petition for registration of title in 1981, and that the

clerk informed him on August 31, 1983 that the petition would not be accepted without a title

search, (*see* Third Am. Compl. 9; Pl.'s Exs., at 30), which means that Plaintiff must have filed

his claim before August 31, 1986.  However, Plaintiff did not file his Complaint until July 18,

2012.  (*See* Dkt. No. 1.)  As such, Plaintiff's claim is untimely—by approximately 26

years—and is therefore dismissed.

The third category of allegations that Plaintiff makes against Dutchess County, regarding

Plaintiff's inability to obtain various Dutchess County tax maps he sought through FOIL

requests and other means, must also be dismissed, but for different reasons.  In contrast with the

first two categories, in which Plaintiff's allegations relate to single acts of alleged misconduct,

Plaintiff's tax-map-related allegations appear to concern Dutchess County's allegedly deficient

policies, customs, or practices in connection with the maintenance and accessibility of such

maps.  In addition to referencing Dutchess County's rejection of a FOIL request that he made

based on an alleged Dutchess County policy of not identifying common-law easements on tax

maps unless such easements serve multiple parcels, (*see* Third Am. Compl. 10–11), and claiming

that "[a]ll Plaintiff's Dutchess County 6770 and 6670 tax maps before 1979 are destroyed or altered or denied access to from the Dutchess County Treasurer, Clerk and [Director] of Real Property Services," (*see id.* at 11), Plaintiff also quotes from what he describes as an opinion of the New York State Board of Real Property Services:

> The [c]ounty in question retains microfilm copies of its tax maps, but, because the map is subject to on going [sic] revision, it has been the policy of the particular county to discourage or even deny access to archival tax maps. The issue here is whether this policy is a correct one, and whether the freedom of information law request should be granted. We disagree with the policy and believe that access should be allowed.

> Tax maps are to be prepared and maintained in current condition. . . . [S]ince a tax roll is a public record which must be permanently retained, it necessarily follows that the tax maps applicable to the tax roll must be permanently retained. . . . The Freedom of Information Law provides that all government records are public unless they fit within one or more statutory exemptions. In our opinion, an archival tax map does not fit any of the exemptions, even though a more current map may exist. It must be made available for public inspection and copying.

(*Id.* at 14–15 (citations omitted).)[10]

However, even if Plaintiff's claims against Dutchess County in this context are based on allegedly wrongful policies, customs, or practices, as opposed to discrete acts, such claims are nevertheless deficient, because there is no violation of a federal constitutional or statutory right from a municipality's inadequate response to a FOIL request. *See Rankel v. Town of Somers*, No. 11-CV-6617, 2014 WL 715702, at *3 n.14 (S.D.N.Y. Feb. 25, 2014) ("[M]any of Plaintiff's allegations—e.g., that the Town refused to fulfill FOIL requests . . . —involve state law, not federal constitutional, violations."); *Jenn-Ching Luo v. Baldwin Union Free Sch. Dist.*, No. 12-

---

[10] The Court reproduces this portion of Plaintiff's Third Amended Complaint not to suggest that the obligations described therein are applicable to Dutchess County, but only as evidence that Plaintiff is attempting to allege deficiencies in Dutchess County's tax-map-keeping policies customs, or practices, not merely Dutchess County's misconduct in responding to Plaintiff's tax-map-related requests on discrete occasions.

CV-6054, 2013 WL 4719090, at *4 n.6 (E.D.N.Y. Sept. 3, 2013) ("To the extent that Plaintiff is attempting to assert a constitutional due process violation arising out of Defendants' failure to comply with the procedural requirements of FOIL, his claim also fails. . . .  Plaintiff does not have a protected property interest in the requested FOIL documents." (citation omitted)); *Collins v. City of New York*, 923 F. Supp. 2d 462, 473 (E.D.N.Y. 2013) ("A violation of New York's FOIL does not, standing alone, support a § 1983 claim."); *Hayes v. Perotta*, 751 F. Supp. 2d 597, 602 (S.D.N.Y. 2010) ("The Complaint does allege that [the defendant local governmental unit] wrongly refused to provide Plaintiff with information that he requested. . . . [But] [t]his allegation does not state a § 1983 claim, as it is not rooted in a claimed constitutional or federal statutory right.").  Instead, an allegedly wrongful denial of a FOIL request is a matter of state law that is to be addressed in an Article 78 proceeding.  *See Papay v. Haselhuhn*, No. 07-CV-3858, 2010 WL 4140430, at *8 (S.D.N.Y. Oct. 21, 2010) ("Plaintiff's remedy for an alleged violation of FOIL is to appeal in writing within thirty days to the head, chief executive, or governing body of the entity.  A person denied access to a record in an appeal determination may then seek review pursuant to the state procedures outlined in Article 78." (citations omitted)); *Hayes*, 751 F. Supp. 2d at 602 (noting that the plaintiff's claim that the defendant local governmental unit wrongly refused to provide him with information that he requested was "governed by New York's Freedom of Information Law").  Thus, to the extent that Plaintiff has not pursued any Article 78 process to address the alleged denial of his FOIL application—and Plaintiff has not suggested that he has anywhere in his Third Amended Complaint—his Section 1983 claim against Dutchess County falters.[11]

---

[11] The Court also notes that, insofar as Plaintiff's tax-map-related claims are based on other alleged conduct by Dutchess County, unrelated to any alleged denials of any FOIL requests

However, there is another category of allegations in Plaintiff's Third Amended Complaint directed towards Dutchess County that it does not address in its Memorandum of Law.  Plaintiff appears to be attempting to assert a claim against Dutchess County for its failure to hold a hearing in connection with the confiscation of Plaintiff's rifles.  As Plaintiff alleges, "The Town of Pine Plains Justice *and the Dutchess County District Attorney*, never held a pre trial hearing to evaluate if plaintiffs rifles were lawfully taken as required in the case of Gabriel Razzano v. County of Nassau, et al."  (Third Am. Compl. 18 (emphasis added); *see also id.* at 2 ("The Complaints of Complainant Varney, did not amount to a criminal offense to be placed against Plaintiff Hudson upon which Plaintiffs Rifles were taken, without pretrial hearing."); *id.* at 7 ("N.Y.S. Trooper Miano never appeared at court on the trial date and there was never a post deprivation of Plaintiff's rifle, hearing before the trials, and Plaintiff's rifles have never been returned."); *id.* at 18 ("Gabriel Razzano v County of Nassau, et al . . . held that Denial of prompt due process hearing after removal of rifles (long guns) is depravation of plaintiffs Fourteenth Amendment rights . . . .").)

Plaintiff elaborates on these allegations in his Reply to Dutchess County's Motion to Dismiss, stating that, "[h]ad a Pre Trial Hearing been scheduled *by the County of Dutchess District Attorney* there would have been no reason for the N.Y.S. State Police to have taken Plaintiffs Rifles."  (Pl.'s Reply to Def. Dutchess County's Mot. to Dismiss ("Pl.'s Reply Mem.") 3 (emphasis added).)  Plaintiff also states that his "complaint *against the County of Dutchess* regarding the taking of Plaintiff's rifles is similar to the matter of the Complaint of Razzano . . . , which was included in every complaint and amended complaint."  (*Id.* (emphasis added).)

---

that Plaintiff may have made, Plaintiff has not provided the Court with any reason to believe that such conduct constitutes a violation of federal constitutional law.

Plaintiff claims that "[t]here has never been a sufficient answer to the Plaintiff[']s complaint of denial of plaintiffs pre trial hearing upon the taking of Plaintiff[']s Rifles.  Against the Defendants, in Plaintiff's Amended Complaint . . . Plaintiff asserts the cause of action for Violation of his 14th Amendment procedural due process rights . . . ."  (*Id.* at 5.)  According to Plaintiff, "[t]he Defendants should answer why Plaintiff[']s Rifles were taken without Post seizure hearing, or charge substantiating a crime; the court must determine first whether the plaintiff's alleged erroneous deprivation of property was pursuant to a governmental policy.  If it was the court must apply the Mathews test to determine what pre- and post-deprivation remedies are due *from Dutchess county*."  (*Id.* at 9 (emphasis added).)

However, Dutchess County did not address this claim in its Memorandum of Law, and as a result, the Court will not do so here.  But Plaintiff should note that, in its present form, his claim may fail to satisfy *Monell* for the same reason as does his claim in regard to the assistant district attorney's alleged misconduct.  As noted above, a "single incident involving [an] employee below the policymaking level generally will not suffice to support [an] inference of a municipal custom or policy," *Vann*, 72 F.3d at 1050.  But Plaintiff's allegations are based on a single incident of alleged misconduct involving "the Dutchess County District Attorney."  (Third Am. Compl. 18; Pl.'s Reply Mem. 3.)  Although courts within the Second Circuit have held that a district attorney can be a policymaker for the purposes of *Monell* in some contexts, *see, e.g., Frank v. Relin*, 1 F.3d 1317, 1327 (2d Cir. 1993) ("We have noted that generally, where a district attorney acts as the manager of the district attorney's office, the district attorney acts as a county policymaker." (alterations and internal quotation marks omitted)), when Plaintiff's Third Amended Complaint is read in context, it seems as though, by referring to "the Dutchess County District Attorney," he was attempting to refer to the same assistant district attorney whom he

claims suborned perjury at his trial, in which case his allegations would likely be deficient, *see generally Conte*, 2010 WL 3924677, at \*29–30.

The Court has provided Plaintiff with multiple opportunities to cure the *Monell* problems with his claims against Dutchess County, which problems the Court has previously identified on numerous occasions.  (*See, e.g.*, Order (Sept. 11, 2012) 5–6 (Dkt. No. 12); Order (Nov. 1, 2012) 5–6 (Dkt. No. 27).)  Despite the Court's warnings, Plaintiff's Third Amended Complaint still suffers from many of the same shortcomings as did its earlier iterations.  However, given Plaintiff's pro se status, and given that Dutchess County did not address Plaintiff's claims related to its alleged failure to provide him with a hearing in connection with the confiscation of his rifles in its Memorandum of Law, the Court will grant Plaintiff one final opportunity to amend his Complaint to satisfy *Monell*.  But Plaintiff should be aware that, if he fails to state viable *Monell* claims against Dutchess County in his Fourth Amended Complaint, any claims that he is attempting to assert against Dutchess County will be dismissed with prejudice.

### 2.  Trooper Miano and Trooper Mergendahl's Motion to Dismiss

#### a.  False-Arrest Claims

Troopers Miano and Mergendahl argue that "Plaintiff's Third Amended Complaint . . . appears to attempt to assert claims against [them] for false arrest."  (Miano and Mergendahl's Mem. 1.)  The Court disagrees.  Even construing Plaintiff's Third Amended Complaint liberally, and interpreting it to raise the strongest arguments that it suggests, *see Sykes*, 723 F.3d at 403, Plaintiff cannot be understood to be asserting false-arrest claims therein.

"A § 1983 claim for false arrest or false imprisonment" is "based on an individual's Fourth Amendment right to be free from unreasonable seizures."  *Weaver*, 2014 WL 950041, at \*4; *see also Crews v. Cnty. of Nassau*, — F. Supp. 2d —, 2014 WL 558696, at \*10 (E.D.N.Y.

Feb. 11, 2014) ("Under New York law, the tort of false arrest is synonymous with that of false imprisonment, and courts use that tort to analyze an alleged Fourth Amendment violation in the Section 1983 context." (internal quotation marks omitted)).  "To prevail, a plaintiff must prove four elements: (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not contest the confinement and (4) the confinement was not otherwise privileged." *Crews*, 2014 WL 558696, at *10 (internal quotation marks omitted); *see also Laster v. Mancini*, No. 07-CV-8265, 2013 WL 5405468, at *12 (S.D.N.Y. Sept. 25, 2013) (same); *Chillemi v. Town of Southampton*, 943 F. Supp. 2d 365, 377 (E.D.N.Y. 2013) (same).

In his Third Amended Complaint, Plaintiff makes only two references to his arrests. First, Plaintiff alleges that, "[w]hen [he] appeared in the Town of Pine Plains Justice Court [he] was arrested and placed in jail, solitary confinement; and on the following day released from jail on Plaintiff's posting of seven thousand five hundred dollars bail bond."  (Pl.'s Third Am. Compl. 7 (citation omitted).)  Second, in describing Troopers Miano and Mergendahl's alleged entries onto his property, Plaintiff alleges that "[t]he State Police came to arrest Plaintiff at his home."  (*Id.* at 16.)  However, Plaintiff was not in fact arrested contemporaneously with those alleged entries, as he does not appear to have been present when they occurred.  Nowhere in Plaintiff's Third Amended Complaint does he allege that his arrests were wrongful in any way. The closest that he comes to doing so is in the section of his Third Amended Complaint titled "Relief," in which he "requests damages for emotional distress and post judgment interest for the removal of Plaintiffs rifles (Long Guns) . . . , the return of plaintiff's rifle and shotgun *and four million dollars for the denial of plaintiff's liberty and rights* or whatever relief the court deems just and proper."  (*Id.* at 21 (emphasis added).)  But the main thrust of Plaintiff's request for

relief is clearly directed towards his rifles, and it is unclear to what, if any, separate and distinct liberty interests or rights Plaintiff is referring.

There are several statements contained in the exhibits attached to Plaintiff's Third Amended Complaint that might be construed as supporting a false-arrest claim.  However, these statements appear in documents that Plaintiff submitted for other purposes, before he filed his original Complaint in this Action, and it is unclear whether Plaintiff intended those statements to be incorporated into the allegations that he seeks to make in this procedural setting.  For example, in the March 15, 2011 letter that Plaintiff wrote to "[t]he New York State Police . . . Records Appeal Officer," in which Plaintiff "appeal[ed] the [March 3, 2011] decision and order" of Captain Wagner denying one of his FOIL requests, Plaintiff wrote that, "[u]pon [his] arrest for trespass on March 2, 2011[, Trooper Mergendahl] took [him] the long way around to interrogate to the Dutchess County jail."  (Pl.'s Exs., at 19.)  Additionally, in Plaintiff's "Answer to Allegations by Sebastian Varney," which he submitted to the Town of Pine Plains Criminal Court on June 29, 2010, he wrote, "N.Y. State Police interrogated me for 4 hours they wanted to know where my children live and to know about my rifles," although it appears that these statements most likely relate to a separate incident with no connection to the instant matter. (*Id.* at 6(d).)[12]

The lack of false-arrest allegations in Plaintiff's Third Amended Complaint is unsurprising, as the Court already dismissed any false-arrest claims that Plaintiff was attempting

---

[12] In his April 19, 2013 response to Troopers Miano and Mergendahl's April 1, 2013 premotion letter, in which Trooper Miano and Trooper Mergendahl made clear that they would seek to dismiss any false-arrest claims that Plaintiff was attempting to assert against them in his Third Amended Complaint, Plaintiff states, "Mergendahl made a false arrest."  (*See* Dkt. No. 61.)  However, as noted above, Plaintiff did not allege anything to this effect in the Third Amended Complaint itself.

to assert against Troopers Miano and Mergendahl in earlier versions of his Complaint in its November 1, 2012 Order. (*See* Dkt. No. 27.) Although Troopers Miano and Mergendahl do not explicitly make this point in their Memorandum of Law, the premotion letter that they submitted in advance of their Motion to Dismiss acknowledged as much. (*See* Dkt. No. 63 ("To the extent that the [Third Amended Complaint] is construed as including a false arrest claim as well, the claims fails as a matter of law because plaintiff was convicted of the charge on which he was arrested. *The Court already dismissed any false arrest claims in plaintiffs' prior complaints on these grounds.*" (emphasis added)).)

However, the Court's previous dismissal of any false-arrest claims that Plaintiff was attempting to assert against Troopers Miano and Mergendahl was based on an incorrect application of Second Circuit precedent. As noted above, the Court stated in its September 12, 2011 Order that, "to the extent Plaintiff [was] asserting a false arrest claim, he should know" that he was not permitted to "bring any claims that would implicate the validity of his conviction or sentence unless he [had] shown that his state court conviction [had] been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus," and cited to *Heck*, 512 U.S. at 486–87, as well as *Kevilly*, 410 F. App'x at 374, a Second Circuit decision interpreting *Heck*, in support of that proposition. (Dkt. No. 12 (internal quotation marks omitted).) In its November 1, 2012 Order, the Court subsequently dismissed any false-arrest claims that Plaintiff was attempting against Troopers Miano and Mergendahl on these same grounds. (*See* Dkt. No. 27.)

But in the section of *Kevilly* to which the Court cited, the Second Circuit was discussing claims alleging insufficiency of the charging information, prosecutorial misconduct, and a

30

conspiracy between the plaintiff's court-appointed counsel and the district attorney's office, not claims alleging false arrest. *See Kevilly*, 410 F. App'x at 374. In fact, in the very next section of *Kevilly*, the Second Circuit specifically stated that "[the plaintiff's] false arrest and unlawful imprisonment claims—*which are not barred by Heck* . . . ." *Id.* at 375 (emphasis added). In addition to this passage in *Kevilly*, the Second Circuit has held that false-arrest claims are not barred by *Heck* on numerous other occasions, including as recently as January of this year. *See Poventud v. City of New York*, —F.3d—, 2014 WL 182313, at *8 (2d Cir. Jan. 16, 2014) (en banc) ("Unlike malicious prosecutions, many violations of constitutional rights, even during the criminal process, may be remedied without impugning the validity of a conviction. For example, . . . [w]hen a plaintiff is unlawfully arrested without probable cause, his § 1983 claim accrues before any conviction.").

What is more, even if *Heck* were applicable to false-arrest claims as a general matter, it likely still would not bar any false-arrest claims that Plaintiff seeks to assert here, as "[t]he *Heck* bar to § 1983 actions . . . does not apply to former prisoners who are no longer in custody because only individuals in state or federal custody can petition for writs of habeas corpus to collaterally challenge their convictions." *Barmapov v. Barry*, No. 09-CV-3390, 2011 WL 32371, at *3 (E.D.N.Y. Jan. 5, 2011) (internal quotation marks omitted); *see also Huang v. Johnson*, 251 F.3d 65, 75 (2d Cir. 2001) (holding that a plaintiff's "Section 1983 claim [for false imprisonment] must be allowed to proceed" where the plaintiff did "not challenge the validity of [her son's] conviction" and her son had "long since been released from . . . custody"); *Hardy v. Fischer*, 701 F. Supp. 2d 614, 620 n.6 (S.D.N.Y. 2010) ("The Court recognizes that *Heck*'s favorable termination requirement does not bar plaintiffs who are not in custody—and thus have no remedy through habeas relief—from seeking relief pursuant to section 1983."). Here, it

appears as though Plaintiff was not in custody at the time that he filed his original Complaint, or that Plaintiff has been in custody at any point since.

Although it seems unlikely, the Court is concerned that its November 1, 2012 Order, in which it erroneously relied on *Heck* to dismiss any false-arrest claims against Troopers Miano and Mergendahl that Plaintiff may have been attempting to assert, could have discouraged Plaintiff from alleging, or from fully fleshing out, any such claims that he otherwise would have sought to assert in his Third Amended Complaint.  It is conceivable that, based on the Court's prior Orders, Plaintiff could have reached the conclusion that, even though he believed that he had a good-faith basis to assert such claims, to do so would be pointless.  Therefore, out of an abundance of caution, the Court will provide Plaintiff with one final opportunity to amend his Complaint to adequately allege any false-arrest claims that he may believe that he has against Troopers Miano and Mergendahl.

Should Plaintiff attempt to assert false-arrest claims against Troopers Miano and Mergendahl in his Fourth Amended Complaint, and should Troopers Miano and Mergendahl thereafter seek to dismiss such claims, Troopers Miano and Mergendahl will not be required to submit a premotion letter in advance of submitting a motion to dismiss them, as would ordinarily be required by the Court's individual rules of practice.  Additionally, should Troopers Miano and Mergendahl seek to dismiss any such claims that Plaintiff attempts to assert in his Fourth Amended Complaint, Troopers Miano and Mergendahl will be permitted to rely upon the arguments that they have made in their Memorandum of Law to support such a motion, and will not be required to submit a second memorandum.  However, should Troopers Miano and Mergendahl believe a second memorandum to be necessary to supplement the arguments that they have already put forth, they will, of course, be permitted to submit such a memorandum.

### b.  Rifle-Related Claims

Troopers Miano and Mergendahl argue that, "to the extent Plaintiff pleads claims regarding the removal of his rifles" against them, "all such claims fail for lack of personal involvement." (Miano and Mergendahl's Mem. 6.)  Specifically, Troopers Miano and Mergendahl claim that "[P]laintiff alleges that an Order was issued by [Justice Acker] that required [P]laintiff to turn his rifles over to the Dutchess County Sheriff, and that, pursuant to this Order, [P]laintiff thereafter turned his rifles over to State Police Officer 'Doncitek,'" but that "neither Trooper Mergendahl nor Miano are alleged to have been involved in the taking of plaintiff's rifles, so cannot be held liable." (*Id.* at 7 (citation omitted).)  Troopers Miano and Mergendahl also argue that "Plaintiff further alleges that his rifles should have been, but were not, returned to him by the State Police after the Order of Protection was cancelled," but that "Troopers Mergendahl and Miano again are not alleged to have had any involvement in the alleged failure to return [P]laintiff's rifles"—"[i]ndeed, the exhibits to the complaint demonstrate their non-involvement," as "the request for return was . . . sent to and being considered by senior State Police officials," including Captain Brown, in a process in which "[n]either Mergendahl nor Miano were involved." (*Id.*)  Additionally, Troopers Miano and Mergendahl argue that the claims against them should be dismissed on the independent grounds that "there can be no federal claim against the State Police for simply accepting plaintiff's rifles pursuant to Justice Acker's facially-valid Order," and that, "because a reasonable officer would not have believed that any actions Mergendahl and Miano are alleged to have personally taken in regard to the alleged removal of and failure to return plaintiff's rifles violated plaintiff's constitutional rights, they are, at a minimum, entitled to qualified immunity," (*id.* at 7–8).

33

Contrary to these arguments, the Court does not interpret Plaintiff's Third Amended Complaint to allege that Troopers Miano and Mergendahl are at fault because they are the State Troopers who took possession of Plaintiff's rifles, or that they are the State Troopers who refused and continue to refuse to return them.  Rather, Plaintiff's Third Amended Complaint is best read as alleging that Trooper Miano is responsible for the seizure of Plaintiff's rifles because he wrongfully signed the information accusing Plaintiff of the criminal conduct on which Justice Acker's protection order was based.  (*See, e.g.*, Third Am. Compl. 7 ("Upon the criminal complaints of Officer Miano on charges of criminal trespass and criminal harassment and the deposition of Sebastian Varney, the Town of Pine Plains Justice Court, Justice Christi Acker issued an Order of Protection, that took Plaintiff's rifles on June 24, 2010, lasting for six months." (citations omitted)); *id.* at 16 ("Officer Miano made two criminal complaints against Plaintiff upon which plaintiffs rifles were taken . . . ." (citation omitted)); *id.* at 18 ("Plaintiff's Rifles were taken from plaintiff under the Town Justice order of protection issued upon the criminal complaint of N.Y.S. Trooper Officer Miano . . . .").)  Plaintiff appears to be alleging that Trooper Miano's signing of the informations was wrongful because the charges contained therein were not supported by Varney's deposition.  (*See, e.g., id.* at 6–7 ("The Complaint-Deposition of Sebastian Varney never amounted to the crime Plaintiff was prosecuted by Dutchess County District Attorney for violating."); *id.* at 8 ("[T]he Varney deposition did not amount to a crime." (citation omitted)).  But the reason why Plaintiff appears to be alleging that the informations were not supported by Varney's deposition is not that Varney's deposition was somehow deficient in terms of the type or amount of information that it provided.  Instead, Plaintiff appears to be alleging that the informations were not supported by Varney's deposition because Plaintiff was not in fact trespassing when he entered Varney's land, as Plaintiff had a

34

right to be there under the doctrine of adverse possession.  (*See, e.g., id.* at 7 ("The Dutchess County District Attorney wanted to make [P]laintiff a criminal for using the road to Plaintiff's property that Plaintiff has used for 33 years in adverse possession.").)

As the foregoing makes clear, it is difficult to characterize the nature of the rifle-related constitutional tort Plaintiff is attempting to assert against Trooper Miano.  Plaintiff's theory appears to be that Trooper Miano's signing of the informations accusing him of trespass and harassment was improper because Plaintiff adversely possessed the property on which he was accused of trespassing, and upon which the harassment of which he was accused took place; that those informations were the basis for Justice Acker's protection order directing Plaintiff to surrender his rifles to the Dutchess County Sheriff's Office; and that Justice Acker's protection order was the basis for the seizure of Plaintiff's rifles by the New York State Police, which rifles the New York State Police still have not returned.  In other words, Plaintiff seems to be alleging that Trooper Miano's wrongful signing of the informations set in motion a chain of events that eventually resulted in the deprivation of Plaintiff's rifles, and that Trooper Miano is therefore responsible for such deprivation.

There may be fatal flaws in Plaintiff's theory of liability, among them that any wrongful acts that Trooper Miano allegedly committed could not have been the proximate cause of whatever injuries Plaintiff has suffered as a result of the State Police's seizure of and failure to return Plaintiff's rifles, due to breaks in the causal chain caused by independent intervening actors.  *See Higazy v. Templeton*, 505 F.3d 161, 175 (2d Cir. 2007) (finding that a § 1983 action "to vindicate a constitutional right . . . employs the tort principle of proximate causation"); *Townes v. City of New York*, 176 F.3d 138, 146 (2d Cir. 1999) ("A § 1983 action, like its state tort analogs, employs the principle of proximate causation."); *Martinez v. City of New York*, No.

12-CV-3806, 2012 WL 4447589, at *4 (E.D.N.Y. Sept. 25, 2012) (finding that an "intervening actor" broke the causal chain in a § 1983 action for false arrest). There may also be a strong argument to be made that Trooper Miano is entitled to qualified immunity. However, Troopers Miano and Mergendahl did not raise these arguments in their Memorandum of Law. They did not raise the proximate causation argument at all; and while they devoted space to explaining why they are entitled to qualified immunity for arresting Plaintiff, (*see* Miano and Mergendahl's Mem. 4–5), they did not explain why they are so entitled in relation to a claim that they wrongfully signed informations charging Plaintiff with crimes.[13]  Given the lack of clarity in Plaintiff's Third Amended Complaint, Troopers Miano and Mergendahl's misinterpretation of the rifle-related claim that Plaintiff is attempting to assert against them may be understandable. But the Court ordinarily does not consider arguments that represented parties do not raise in their memoranda. *See Elektra Entm't Grp., Inc. v. Barker*, 551 F. Supp. 2d 234, 240 n.6 (S.D.N.Y. 2008) ("Because Defendant has not raised this argument in her brief, the Court declines to reach this question.") (collecting cases). As such, the Court will not dismiss Plaintiff's claims on the basis of proximate causation or qualified immunity at this time.

However, the Court notes that the rifle-related claim that Plaintiff appears to be asserting—that Trooper Miano's wrongful signing of the informations set into motion a chain of

---

[13] To the extent that Troopers Mergendahl and Miano's argument that, "because a reasonable officer would not have believed that any actions Mergendahl and Miano are alleged to have personally taken in regard to the alleged removal of and failure to return plaintiff's rifles violated plaintiff's constitutional rights, they are, at a minimum, entitled to qualified immunity," (Miano and Mergendahl's Mem. 8), could be construed as encompassing a claim that Trooper Miano is entitled to qualified immunity for wrongfully signing informations charging Plaintiff with crimes, the Court notes that this argument is entirely conclusory. Troopers Mergendahl and Miano do not explain why no reasonable officer could have held such a belief, nor do they cite a single case in support of their position. (*See id.*)

events that eventually resulted in the deprivation of Plaintiff's rifles, and that Trooper Miano is therefore responsible for such deprivation—applies only to Trooper Miano, and not to Trooper Mergendahl.  As the exhibits that Plaintiff attached to his Third Amended Complaint demonstrate, Trooper Mergendahl did not sign any informations accusing Plaintiff of any crimes until January 28, 2011, (*see* Pl.'s Exs., at 10–11), more than seven months after Justice Acker issued the protection order on June 24, 2010, (*see* Pl.'s Exs., at 4), and more than a month after she extended it on December 15, 2010, (*see* Pl.'s Third Am. Compl. 7).  Accordingly, although the Court does not now dismiss any rifle-related claims that Plaintiff may be attempting to assert against Trooper Miano, any such claims that Plaintiff may be attempting to assert against Trooper Mergendahl are dismissed.

### III.  CONCLUSION

For the foregoing reasons, Dutchess County's Motion to Dismiss is granted without prejudice.  Additionally, Troopers Miano and Mergendahl's Motion to Dismiss is granted in part and denied in part without prejudice.  Any rifle-related claims that Plaintiff is attempting to assert against Trooper Mergendahl are dismissed with prejudice, but any such claims that Plaintiff is attempting to assert against Trooper Miano are not dismissed at this time.

Plaintiff may file a Fourth Amended Complaint within 30 days of the issuance of this Opinion, which Complaint may address the deficiencies that the Court has identified.  Alternatively, Plaintiff may notify the Court and Defendants that he wishes to proceed with the Third Amended Complaint.  Defendants will then be given 20 days either to answer the operative complaint or to file a premotion letter.  As noted above, should Troopers Miano and Mergendahl seek to dismiss any false-arrest claims that Plaintiff may assert against them in his Fourth Amended Complaint, they will not be required to submit a premotion letter in advance of

filing a motion to dismiss such claims.  However, should Troopers Miano and Mergendahl seek

to dismiss any other claims that Plaintiff may assert against them in his Fourth Amended

Complaint—for example, the rifle-related claim that Plaintiff is attempting to assert against

Trooper Miano in his Third Amended Complaint—they will be required to submit a premotion

letter before doing so.  The Clerk of Court is respectfully requested to terminate the pending

motions.  (*See* Dkt. Nos. 70, 77.)

SO ORDERED.

Dated:      September 29, 2014
            White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE