UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT HUDSON,

      Plaintiff,

 -v-

COUNTY OF DUTCHESS, NEW YORK
STATE POLICE OFFICER MIANO, and
NEW YORK STATE POLICE OFFICER J.
MERGENDAHL,

      Defendants.

No. 12-CV-5548 (KMK)

OPINION & ORDER

Appearances:

Robert Hudson
Stanfordville, N.Y.
*Pro Se Plaintiff*

David Lewis Posner, Esq.
McCabe & Mack LLP
Poughkeepsie, N.Y.
*Counsel for Defendant County of Dutchess*

Daniel A. Schulze, Esq.
Office of the Attorney General of the State of New York
New York, N.Y.
*Counsel for Defendants Miano and Mergendahl*

KENNETH M. KARAS, District Judge:

   Robert Hudson ("Plaintiff"), proceeding pro se, brings claims against the County of

Dutchess, New York State Trooper Miano ("Miano") and New York State Trooper Mergendahl

("Mergendahl") under 42 U.S.C. § 1983, alleging that Miano and Mergendahl (collectively

"Defendants") violated his constitutional rights for their involvement in arresting him and

bringing charges against him and the subsequent confiscation of his rifles.  Mergendahl and

Miano now move to dismiss certain claims asserted against them.  For the following reasons, Defendants' Motion To Dismiss is granted.

## I.  Background

### A.  Factual Background

The following facts are taken from Plaintiff's Fourth Amended Complaint ("FAC"), and attached exhibits, and are presumed to be true for the purpose of this Motion To Dismiss. Plaintiff's allegations have been summarized in detail in the Court's previous Opinions in this case, and therefore the Court will only address the factual allegations relevant to the instant Motion.  Plaintiff's claims relate to charges brought against him for allegedly trespassing onto land belonging to his neighbors, the Varneys, and for harassing the Varneys.  (*See, e.g.*, FAC 4, 9 (Dkt. No. 94).)

On June 24, 2010, Sebastian Varney ("Varney") went to the Town of Pine Plains Criminal Court and swore a deposition, under penalty of perjury.  (Pl.'s Exs., at 36.)[1]  That deposition stated, in relevant part:

> These events occurred on my farm – 258 Hicks Hill Rd. at about 6:10 PM. A blue and white SUV drove down my private driveway towards my home.  As the car approached it swerved around my dog nearly hitting it and continued towards my [unintelligible.]  As I watched the car approach my dog I waved my arms and shouted to avoid the dog.  I walked towards the still moving vehicle to identify the driver and saw it to be Mr. Robert Hudson.  As his car passed closely by me he said "What's up young Varney" and continued down the road past me and across our property.  This event was extremely unnerving and caused me to be concerned for my personal well being. . . . The property is clearly posted and Robert Hudson has

---

[1] Plaintiff did not number the exhibits that he attached to his FAC.  Instead, Plaintiff included an index that provides the pages at which each document appears, and numbered the documents on the bottom right.  The Court will follow this convention, and refer to Plaintiff's exhibits as a single consecutively paginated document.  There is another set of numbers on the bottom middle of the exhibits, which numbers the Court will disregard.

no permission to access or enter our land.  He has been repeatedly advised by us
and the property manager [unintelligible].

(*Id.*)  In his deposition, Varney also requested an order of protection.  (*See id.*)

Later that day, and apparently in reliance on Varney's deposition, Miano signed two

informations charging Varney with crimes under New York law.  First, Miano signed an

information accusing Plaintiff of criminal trespass in the third degree, in violation of New York

Penal Law § 140.10.[2]  (*See id.* at 37.)  Specifically, the criminal trespass information that Miano

signed stated that, on June 24, 2010, Plaintiff "did drive his [vehicle] on the property of

Sebastian Varney . . . in the Town of Pine Plains.  [Plaintiff] was notified several times not to

enter or drive on said property.  The property is clearly posted and fenced in."  (*Id.*)  On the same

day and in connection with the same events, Miano signed a second information accusing

Plaintiff of harassment in the second degree, in violation of New York Penal Law § 240.26.[3]

(*See id.* at 38.)  Specifically, the criminal harassment information that Miano signed stated that,

on June 24, 2010, Plaintiff "did drive his vehicle . . . on the property of . . . Varney and while

doing so did yell out the window, 'What's up young Varney.'  [Plaintiff] also swer[]ved at

[Varney's] dog trying to strike the dog with his vehicle.  [Plaintiff] was notified several times to

stay off the property and the property is well marked and fenced in."  (*Id.*)

---

[2] Section 140.10 provides in relevant part that "[a] person is guilty of criminal trespass in
the third degree when he knowingly enters or remains unlawfully in a building or upon real
property . . . which is fenced or otherwise enclosed in a manner designed to exclude intruders."
N.Y. Penal Law § 140.10.

[3] Section 240.26 provides in relevant part that "[a] person is guilty of harassment in the
second degree when, with intent to harass, annoy[,] or alarm another person . . . he or she
engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such
other person and which serve no legitimate purpose."  N.Y. Penal Law § 240.26.

Also on June 24, 2010, as a result of the foregoing events, Town of Pine Plains Justice Christi J. Acker ("Justice Acker") signed a temporary order of protection, ordering Plaintiff to stay away from Varney's home and business; to refrain from communications or any other contact with Varney; to refrain from various forms of harassment against Varney; to refrain from intentionally injuring or killing Varney's dog without justification; and, most importantly for the purposes of Plaintiff's FAC, to "[s]urrender any and all handguns, pistols, revolvers, rifles, shotguns and other firearms [that Plaintiff] owned or possessed" to the Dutchess County Sheriff's Office by 1:00 PM on June 25, 2010, and to not acquire further guns or firearms.  (Pl.'s Exs., at 39.)  Justice Acker originally specified that the order was to remain in effect until December 24, 2010.  (*See id.*)  The order was extended on December 15, 2010, and was ultimately canceled on May 9, 2011.  (*See id.* at 13, 59.)

As noted above, the order of protection required Plaintiff's rifles to be turned over to the Dutchess County Sheriff's Department.  (FAC 3.)  However, Plaintiff alleges that the Sheriff's Department "would not take Plaintiff's rifles," and instead the New York State Police took the rifles from Plaintiff at the Sheriff's Department.  (*Id.*)  The Court notes that Plaintiff does not specify which New York State Police Officer or Officers took the rifles at the Sheriff's Department, but merely refers to a June 25, 2010 receipt from the New York State Police for one Springfield and one Remington rifle.  (*See id.* (citing Pl.'s Exs., at 40); *see also* Pl.'s Exs., at 40.) The receipt was signed by a New York State Trooper with the surname "Doncitek."  (Pl.'s Exs, at 40.)

By October 18, 2010, criminal proceedings had commenced against Plaintiff in connection with the two charging instruments that Miano signed.  (*See* Pl.'s Exs., at 52.)  On that date, Justice Acker granted the prosecutor's request for an adjournment, as well as his

4

"application for a reduction of the misdemeanor Criminal Trespass 3rd to a violation of Trespass," and informed Plaintiff that "the matter [could] only proceed as a Bench Trial," which was scheduled to begin on October 27, 2010.  (*Id.*)  However, before those criminal proceedings reached a resolution, another incident involving Plaintiff and Varney occurred.

On January 28, 2011, Varney swore to a second deposition, again under penalty of perjury, in which he stated that, on that date, he "witnessed a vehicle" cross onto his property and "proceed through the back portion of [his] property," and that "the operator" had been "shouting as he drove."  (*See id.* at 54.)  Varney "believe[d] without doubt [that] the operator [was] [Plaintiff,] as [Plaintiff] [had] exhibited this course of action on numerous occasions."  (*Id.*)  Varney stated that he had "an order of protection in place," and "would like to have [Plaintiff] arrested."  (*Id.*)

On the same day that Varney swore to this deposition, apparently on the basis of the allegations contained therein, Mergendahl signed an information accusing Plaintiff of a criminal trespass violation under New York Penal Law § 140.05.[4]  (*See id.* at 55.)  Specifically, the criminal trespass information that Mergendahl signed alleged that, on January 28, 2011, Plaintiff "did intentionally, knowingly[,] and unlawfully drive his ATV onto . . . Varney's property . . . ." (*Id.*)  On the same day, Mergendahl also signed an information accusing Plaintiff of criminal contempt in the second degree, in violation of New York Penal Law § 215.50.  (*See id.* at 56.)[5]

---

[4]  Section 140.05 provides that "[a] person is guilty of trespass when he knowingly enters or remains unlawfully in or upon premises."  N.Y. Penal Law § 140.05.

[5]  Section 215.50 provides in relevant part that

[a] person is guilty of criminal contempt in the second degree when he . . . [i]ntentional[ly] fail[s] to obey any mandate, process or notice, issued pursuant to articles sixteen, seventeen, eighteen, or eighteen-a of the judiciary law, or to rules adopted pursuant to any such statute or to any special statute establishing

Specifically, the criminal contempt information that Mergendahl signed alleged that, on January 28, 2011, Plaintiff "did intentionally, knowingly[,] and unlawfully trespass onto . . . the residence of . . . Varney," and that "[a]n active order of protection issued by the Town of Pine Plains Court refrain[ed] [Plaintiff] from being near the home of . . . Varney." (*Id.*)

After a bench trial, Justice Acker found Plaintiff guilty of the trespass charge, but not guilty of the harassment charge, both relating to the June 24, 2010 incident. (*See* Pl.'s Exs., at 53.) Following this verdict, on May 9, 2011, Justice Acker cancelled and recalled the protective order that she issued on June 24, 2010, and that she extended on December 15, 2010. (*See id.* at 13, 59.) Then, on July 19, 2011, a jury acquitted Plaintiff of the charges stemming from the trespass and contempt charges that Mergendahl initiated in January 2011. (*See id.* at 58; FAC 3–4 ("Trooper Mergendahl's criminal charges against Plaintiff . . . were thrown out by a Jury after a trial by Jury took place.").)

On February 14, 2012, Plaintiff wrote a letter to the New York State Police requesting the return of his rifles. (Pl.'s Exs., at 72.) Plaintiff emphasized that "[a]ll [c]riminal charges [against him had] been dismissed," cited the Second Amendment to the United States Constitution, and quoted from *Razzano v. County of Nassau*, 765 F. Supp. 2d 176 (E.D.N.Y. 2011), a case in which the court found that "persons whose longarms are seized by Nassau County are entitled to a prompt post-deprivation hearing," and because the plaintiff in that case had "not [been] offered [that] type of hearing, Nassau County [had] violated [the plaintiff's] Fourteenth Amendment due

---

commissioners of jurors and prescribing their duties or who refuses to be sworn as provided therein.

N.Y. Penal Law § 215.50.

process rights." (*See* Pl.'s Exs., at 72.)  *See also Razzano*, 765 F. Supp. 2d at 190–91.

Specifically, Plaintiff paraphrased the following passage from *Razzano*:

> [T]he right to bear arms is enshrined in the Second Amendment of the United States Constitution, and although this right is by no means unlimited, ownership of guns by individuals legally entitled to those guns is a basic right.  A prompt due process hearing is likely to limit the unfair curtailment of this right.

*Razzano*, 765 F. Supp. 2d at 190.

On February 17, 2012, Captain Jankowiak wrote to Plaintiff that he had "forwarded [Plaintiff's] letter to [Captain Brown]," who would "ensure [that] a supervisory member of his command review[] [the] matter and advise[]  [Plaintiff] of the final determination."  (Pl.'s Exs., at 74.)  Plaintiff alleges that on April 22, 2011, he brought an Article 78 proceeding to have his rifles returned to him.  (FAC 3; *see also* Pl.'s Exs., at 111–17.)  Although it is not entirely clear, it appears that Plaintiff alleges that his rifles still have not been returned to him.  (FAC 9 ("Plaintiff's rifles were not returned though upon multiple occasions [P]laintiff requested the return of his rifles from the state police."); *see also* Pl.'s Exs., at 13 (Third Am. Compl. (alleging that there "was never a post deprivation of Plaintiffs rifle [sic], hearing before the trials, and Plaintiff's rifles have never been returned")).)

Finally, the Court notes that the details of Plaintiff's arrests are somewhat unclear.  In the FAC, Plaintiff alleges that "[b]oth Trooper Miano and Trooper Mergendahl came over the Varney road to Hudson's [p]roperty with shotgun[s] drawn to arrest" him, but does not allege when this occurred or whether he was actually arrested at that time.  (FAC 2.)  Plaintiff's only other factual allegation in the FAC related to an arrest is his bare assertion that "Mergendahl made a false arrest."  (*Id.* at 4.)  By the Court's reading, Plaintiff appears to be addressing an arrest made on March 2, 2011 by Mergendahl and his partner, related to the second set of criminal charges.  (*See* Pl.'s Exs., at 64; *see also id.* at 57 (bail agreement signed by Plaintiff on

March 3, 2011).)  The records attached to Plaintiff's FAC show that Plaintiff was arrested on

June 24, 2010 on Miano's trespass and criminal harassment charges, (Pl.'s Exs., at 53, 59), and

that he was arrested on January 28, 2011 on Mergendahl's criminal trespass and contempt

charges, (Pl.'s Exs., at 58).  However, it is not clear who arrested Plaintiff on those dates and it is

not clear whether Plaintiff seeks to assert claims based on those arrests.

     B.  Procedural Background

     Plaintiff filed a Complaint on July 18, 2012, naming Justice Acker, the Town of Pine

Plains, Dutchess County, the Dutchess County Treasurer, Miano, Mergendahl, the Attorney

General of New York, the Department of State of New York State, Premier Court Reporters, and

Schmieder and Miester, Inc. as Defendants.  (*See* Dkt. No. 1.)  On August 31, 2012, Plaintiff

filed an Amended Complaint.  (*See* Dkt. No. 14.)

     On September 12, 2012, the Court issued an Order directing Plaintiff to amend his

Complaint.  (*See* Order To Amend (Dkt. No. 12).)  The Court "liberally construe[d] the

Complaint as alleging constitutional violations, under 42 U.S.C. § 1983, arising out of the

seizure of [Plaintiff's] rifles, his arrest, and prosecution."  (*Id.* at 3.)  In regard to Plaintiff's claim

that "his rifles were seized from him, and [that] he [had] been unable to recover them in violation

of the Second and Fourteenth Amendments," the Court noted that Plaintiff had not "provide[d]

sufficient facts regarding his claims regarding the firearms," and directed Plaintiff to "amend his

Complaint to explain whether he had the requisite license or permit to possess the weapons,

whether there was any process to recover them, and if there was a process, how it was deficient."

(*Id.* at 4–5.)  The Court also advised that, "[t]o the extent Plaintiff [was] alleging that the

protective order that allegedly required surrender of the weapons . . . independently violated his

Second Amendment rights, he [was] directed to clarify those allegations."  (*Id.* at 5.)

The Court also put Plaintiff on notice that, if he did not remedy certain other deficiencies that the Court identified in its Order, his claims against Justice Acker would be dismissed on the grounds of judicial immunity; that his claims against the Town of Pine Plains, Dutchess County, and the Dutchess County Treasurer would be dismissed in light of *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for failure to allege constitutional violations committed pursuant to an official policy, custom, or practice; that his claims against the Attorney General of New York and the Department of State of New York State would be dismissed on the basis of the immunity from claims for damages in federal court that the Eleventh Amendment to the United States Constitution provides to states and their agencies, as well as on the basis that a state and its agencies are not "persons" within the meaning of 42 U.S.C. § 1983, and therefore may not be sued under the statute; that his claims against Premier Court Reporters and Schmieder and Miester, Inc., would be dismissed because a litigant claiming that his due process rights have been violated must allege that the challenged conduct is attributable to the government, and Plaintiff had not alleged the existence of state action with respect to those Defendants; and that, insofar as Plaintiff was attempting to challenge his conviction on the basis of double jeopardy or the right to trial by jury, or on the basis that his criminal proceedings were otherwise unfair, he was required to first exhaust such claims through the state-court appeals process.  (Order To Amend 5–6, 7–8.)

As to the claims that the Court construed Plaintiff's Complaint to be asserting against Miano and Mergendahl, the Court found that, to the extent that Plaintiff was asserting a claim against them based on their alleged violation of the Fourth Amendment in connection with their alleged entries onto his property, Plaintiff was not required to "allege more at [that] point."  (*Id.* at 6.)  However, the Court also stated that, "to the extent Plaintiff [was] asserting a false arrest

9

claim [against them], he should know that he" was not permitted to "bring any claims that would implicate the validity of his conviction or sentence unless he [had] shown that his state court conviction [had] been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." (*Id.* at 7 (internal quotation marks omitted).)  In support of this proposition, the Court cited to *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994), as well as *Kevilly v. New York*, 410 F. App'x 371, 374 (2d Cir. 2010), a Second Circuit decision interpreting *Heck*.  (*See* Order To Amend 7.)

On October 10, 2012, Plaintiff filed a Second Amended Complaint, in which he named three private law firms—Gambeski and Frum, McCabe and Mack, and Gellert and Klein P.C.— as additional Defendants.  (*See* Dkt. No. 23.)  On November 1, 2012, the Court issued an Order in which it considered whether Plaintiff's Second Amended Complaint adequately addressed the deficiencies that it identified in its September 12, 2012 Order, and whether the addition of the three law-firm Defendants presented any new problems.  (*See* Dkt. No. 27.)  The Court found that Plaintiff had not addressed those deficiencies as to Justice Acker, the Town of Pine Plains, the Dutchess County Treasurer, the Attorney General of New York, the Department of State of New York State, Premier Court Reporters, and Schmieder and Miester, Inc., and accordingly dismissed all claims that Plaintiff was attempting to assert against those Defendants.  (*See id.* at 6.)  The Court also dismissed the claims that Plaintiff was attempting to assert against the three law-firm Defendants, as Plaintiff had "not made any allegations whatsoever against [them], much less described how their conduct [was] attributable to the government."  (*See id.* at 4.)

However, in relation to Plaintiff's claims regarding the seizure of his rifles, the Court found that he had "provide[d] additional details regarding [their] seizure . . . , the licensing and

permit requirements in Dutchess County, and his attempts to recover[] the weapons," and that as a result, "Plaintiff's claims regarding the seizure of his rifles [could] proceed," without prejudice to Defendants' right to file dispositive motions at a later date.  (*Id.* at 5.)  The Court also found that Plaintiff's claims regarding Miano's and Mergendahl's alleged violation of the Fourth Amendment in connection with their alleged entries onto his property could also proceed, again without prejudice to Defendants' right to file dispositive motions at a later date.  (*See id.*)

But the Court also noted that its previous Order had explained that Plaintiff was not permitted to bring a claim that would implicate the validity of his conviction or sentence, unless he had shown that his state court conviction had been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.  (*See id.*)  Because Plaintiff had "not address[ed] this point in his Amended Complaint," the Court held that, "[t]o the extent that the Amended Complaint [could] be construed to allege a false arrest claim" against Defendants Miano and Mergendahl, "that claim [was] . . . dismissed."  (*Id.*)  Lastly, the Court found that, although Plaintiff had sought to maintain his claims against Dutchess County in his Amended Complaint, he had still failed to "allege any injury resulting from a policy, custom, or practice" as required by *Monell*, and that, if Plaintiff failed to allege such injury in a subsequent version of his Complaint, "Dutchess County [would] be dismissed as a Defendant." (*Id.* at 6.)

On November 28, 2012, Plaintiff filed a Re-Amended Second Amended Complaint.  (*See* Dkt. No. 44.)  Plaintiff then filed a Third Amended Complaint on March 22, 2013, naming only Dutchess County, Miano, and Mergendahl as Defendants.  (*See* Dkt. No. 58.)  Dutchess County moved to dismiss, (Dkt. No. 70), and Miano and Mergendahl moved to dismiss some, but not all,

of the claims asserted against them, (Dkt. Nos. 77, 78).  The Court dismissed Plaintiff's claims

against Dutchess County related to allegedly improper conduct by the assistant district attorney

("ADA") who prosecuted Plaintiff in his trespass and harassment bench trial, holding that the

ADA was not a policymaker for *Monell* purposes.  (Opinion and Order ("Sept. 29, 2014

Opinion") 19–21 (Dkt. No. 89).)  The Court also dismissed as time barred Plaintiff's claims

against Dutchess County related to the Dutchess County clerk's alleged refusal to accept a

petition for registration of title that Plaintiff submitted in 1981.  (*Id.* at 21–22.)  Next, the Court

dismissed Plaintiff's claims against Dutchess County related to its allegedly inadequate response

to a FOIL request because there was no violation of a federal constitutional or statutory right and

Plaintiff did not pursue any Article 78 process to address this alleged deficiency.  (*Id.* at 23–24.)[6]

Finally, the Court noted that Plaintiff attempted to assert a claim against Dutchess County for its

alleged failure to hold a hearing in connection with the confiscation of Plaintiff's rifles, but

because Dutchess County did not move to dismiss this claim, the Court declined to assess its

merits.  (*Id.* at 25–27.)

 With respect to Plaintiff's claims against Miano and Mergendahl, the Court held that,

even construing Plaintiff's Third Amended Complaint liberally, it could not be understood to be

asserting false arrest claims.  (*Id.* at 27.)  However, reasoning that its previous dismissal of

Plaintiff's false arrest claims was based on an incorrect interpretation of Second Circuit law, out

of an abundance of caution, the Court provided Plaintiff with one final opportunity to amend his

Complaint to adequately allege any false arrest claims he believes he may have against

Mergendahl and Miano.  (*Id.* at 30–32.)  With respect to Plaintiff's rifle-related claims against

---

[6] Plaintiff's request was made pursuant to New York State's Freedom of Information Law, N.Y. Pub. Off. Law § 84 *et seq.*

Mergendahl and Miano the Court construed the Third Amended Complaint as alleging that Miano's wrongful signing of the informations set in motion a chain of events that eventually resulted in the confiscation of Plaintiff's rifles, and that Miano is therefore responsible for such deprivation, and because Defendants did not address this argument, the Court declined to address it on its own.  (*Id.* at 35–36.)  However the Court noted that the rifle-related claim Plaintiff appeared to be asserting applied only to Miano, and therefore dismissed with prejudice any rifle-related claims against Mergendahl.  (*Id.* at 36–37.)

Plaintiff filed the FAC on December 24, 2014.  (Dkt. No. 94.)  Pursuant to a schedule set by the Court, (Dkt. No. 99), Mergendahl and Miano filed their Motion To Dismiss and accompanying papers on February 20, 2015, (Dkt. Nos. 100, 101); Plaintiff filed his opposition on March 20, 2015, (Dkt. No. 102); and Defendants filed their Reply on April 20, 2015, (Dkt. No. 103).  The Court notes that Miano and Mergendahl only moved to dismiss Plaintiff's false arrest and rifle-related claims, and that Dutchess County did not move to dismiss the remaining rifle-related claim Plaintiff asserted against the County.

## II.  Discussion

### A.  Standard of Review

Defendants move to dismiss Plaintiff's FAC under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (citations, internal quotation marks, and alterations omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks and alterations omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id; see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see also Dixon v. United States*, No. 13-CV-2193, 2014 WL 23427, at *1 (S.D.N.Y. Jan. 2, 2014) (report and recommendation) ("For the purpose of this motion to dismiss, we assume that the facts alleged in [the plaintiff's] complaint are true."). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v.*

*Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule

12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the

complaint, in documents appended to the complaint or incorporated in the complaint by

reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Israel Disc.*

*Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also*

*Hendrix v. City of New York*, No. 12-CV-5011, 2013 WL 6835168, at *2 (E.D.N.Y. Dec. 20,

2013) (same).

      Because Plaintiff proceeds pro se, the Court must "construe[] [his] [complaint] liberally

and interpret[] [it] to raise the strongest arguments that [it] suggest[s]."  *Sykes v. Bank of Am.*,

723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks omitted.  However, "the liberal

treatment afforded to pro se litigants does not exempt a pro se party from compliance with

relevant rules of procedural and substantive law."  *Bell v. Jendell*, No. 12-CV-6666, 2013 WL

5863561, at *2 (S.D.N.Y. Oct. 31, 2013) (internal quotation marks omitted); *see also Caidor v.*

*Onondaga Cty.*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to

inform themselves regarding procedural rules and to comply with them." (italics and internal

quotation marks removed)).

      B.  Analysis

      Defendants construe the FAC as alleging a false arrest claim against Miano and

Mergendahl as well as a claim against Miano regarding the confiscation and continued

possession of Plaintiff's guns, (*see* Mem. of Law in Supp. of Defs. Mergendahl and Miano's

Mot. To Dismiss Claims in Pl.'s Fourth Am. Compl. ("Defs.' Mem.") 1 (Dkt. No. 101)), and

move to dismiss.

### 1.  False Arrest Claim

Previously, in moving to dismiss Plaintiff's Third Amended Complaint, Defendants construed the Complaint as raising a false arrest claim.  (*See* Sept. 29, 2014 Opinion 27.)  The Court noted in its previous Opinion that, even construing Plaintiff's Third Amended Complaint liberally and interpreting it to raise the strongest arguments it suggested, Plaintiff had not alleged a false arrest claim against Miano or Mergendahl.  (*Id.*)  The Court, however, "out of an abundance of caution" allowed Plaintiff "one final opportunity" to amend his Complaint to sufficiently allege any false arrest claims he sought to bring against Defendants.  (*Id.* at 32.) Defendants again construe Plaintiff's Fourth Amended Complaint as alleging false arrest claims against Miano and Mergendahl.  It is still not clear to the Court that Plaintiff even intends to raise a false arrest claim, at least against Miano.  However, to the extent that Plaintiff brings a false arrest claim, Defendants' Motion To Dismiss that claim is granted.

### a.  Applicable Law

"A § 1983 claim for false arrest or false imprisonment" is "based on an individual's Fourth Amendment right to be free from unreasonable seizures."  *Weaver v. City of New York*, No. 13-CV-20, 2014 WL 950041, at *4 (E.D.N.Y. Mar. 11, 2014); *see also Crews v. County of Nassau*, 996 F. Supp. 2d 186, 203 (E.D.N.Y. 2014) ("Under New York Law, the tort of false arrest is synonymous with that of false imprisonment, and courts use that tort to analyze an alleged Fourth Amendment violation in the Section 1983 context." (internal quotation marks omitted)).  To establish a defendant's individual liability under § 1983, a plaintiff must show "(a) that the defendant is a person acting under the color of state law, and (b) that the defendant caused the plaintiff to be deprived of a federal right."  *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004) (internal quotation marks omitted).  Further, "to

prevail on a claim of false arrest a plaintiff must show that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Jocks v. Tavernier*, 316 F.3d 128, 134–35 (2d Cir. 2003) (internal quotation marks omitted); *see also Wiltshire v. Wanderman*, No. 13-CV-9169, 2015 WL 4164808, at *2 (S.D.N.Y. July 10, 2015) (same).

"Probable cause 'is a complete defense to an action for false arrest' brought under New York law or § 1983." *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)); *see also Conte v. County of Nassau*, No. 06-CV-4746, 2010 WL 3924677, at *12 (E.D.N.Y. Sept. 30, 2010) (same). "Probable cause to arrest exists when the officers have . . . reasonably trustworthy information as to [] facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been . . . committed by the person to be arrested." *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007). To determine whether probable cause existed for an arrest, a court "assess[es] whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." *Ackerson*, 702 F.3d at 19 (internal quotation marks omitted). Where, as here, "there is more than one officer cooperating in the investigation, the knowledge of each officer is presumed to be shared by all." *Abdul-Rahman v. City of New York*, No. 10-CV-2778, 2012 WL 1077762, at *5 (E.D.N.Y. Mar. 30, 2012). Moreover, "probable cause does not require an awareness of a particular crime, but only that some crime may have been committed." *Ackerson*, 702 F.3d at 20 (internal quotation marks omitted). Therefore, "it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." *Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006). "Stated differently, when faced with a claim for false arrest, [the courts]

focus on the validity of the *arrest,* and not on the validity of each charge." *Id.* (emphasis in

original).  "The burden of establishing the absence of probable cause rests on the plaintiff," and

"[t]he question of whether or not probable cause existed may be determinable as a matter of law

if there is no dispute as to the pertinent events and the knowledge of the officers." *Sethi v.

Nassau County*, No. 11-CV-6380, 2014 WL 2526620, at *4 (E.D.N.Y. June 3, 2014) (internal

quotation marks omitted); *see also Nickey v. City of New York*, No. 11-CV-3207, 2013 WL

5447510, at *5 (E.D.N.Y. Sept. 27, 2013) ("[W]hen the facts material to a probable cause

determination are undisputed, the matter is a question of law properly decided by the [c]ourt.").

Apart from considering the plausibility of Plaintiff's false arrest claim, the Court

considers whether Defendants are entitled, as they urge, to qualified immunity.  (*See* Defs.'

Mem. 4–6.)  "The doctrine of qualified immunity protects government officials from liability for

civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*,

555 U.S. 223, 231 (2009) (citations and internal quotation marks omitted).  Qualified immunity

"'gives government officials breathing room to make reasonable but mistaken judgments' by

'protect[ing] all but the plainly incompetent or those who knowingly violate the law.'" *City &

Cty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (alteration in original) (quoting

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)).  Because qualified immunity is "an affirmative

defense [that] . . . reflects an immunity from suit rather than a mere defense to liability[,] . . . it is

appropriate to decide the issue of qualified immunity, when raised, at an early stage of the

litigation, such as when deciding a pre-answer motion to dismiss." *Betts v. Shearman*, No. 12-

CV-3195, 2013 WL 311124, at *4 (S.D.N.Y. Jan. 24, 2013), *aff'd*, 751 F.3d 78 (2d Cir. 2014)

(emphasis and internal quotation marks omitted).

In determining whether a right is clearly established, "th[e] inquiry turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Pearson*, 555 U.S. at 244 (internal quotation marks omitted). "In the Second Circuit, 'a right is clearly established if (1) the law is defined with reasonable clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a reasonable defendant would have understood from the existing law that his conduct was unlawful.'" *Schubert v. City of Rye*, 775 F. Supp. 2d 689, 702 (S.D.N.Y. 2011) (quoting *Luna v. Pico*, 356 F.3d 481, 490 (2d Cir. 2004)). "In the case of allegations to which probable cause is a complete defense, such as false arrest or imprisonment, the Second Circuit has defined the standard of qualified immunity as one of 'arguable probable cause.'" *Betts*, 2013 WL 311124, at *4 (footnote omitted) (quoting *Cerrone v. Brown*, 246 F.3d 194, 202–03 (2d Cir. 2001)). "Arguable probable cause exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well established law." *Cerrone*, 246 F.3d at 202–03 (emphasis in original) (internal quotation marks omitted). In other words, an officer is entitled to qualified immunity if (1) "it was objectively reasonable for the officer to believe that probable cause existed," or (2) "officers of reasonable competence could disagree on whether the probable cause test was met." *See Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991); *see also Betts*, 2013 WL 311124, at *4 (same).

### b.  Analysis

Defendants do not contest that Plaintiff has adequately alleged the first three elements of a claim for false arrest, but rather contend that Plaintiff cannot satisfy the fourth element that "the confinement was not otherwise privileged," *Ackerson*, 702 F.3d at 19 (internal quotation marks omitted), because there was probable cause to arrest Plaintiff and, in any event, Miano and

Mergendahl are entitled to qualified immunity, (Defs.' Mem. 2–6).  In opposition, Plaintiff argues that he had not committed a crime because he had taken possession due to adverse possession and that Varney's sworn statement did not support the charges brought.  (*See generally* Pl.'s Answer to Defs.' Notice of Mot. and Mot. and Mem. of Law (Dkt. No. 102).)

Although the FAC states that "[b]oth Trooper Miano and Trooper Mergendahl came over the Varney road to Hudson's [p]roperty with shotgun[s] drawn to arrest [P]laintiff . . .", (FAC 2), Plaintiff does not actually allege that they arrested him at that time.  Indeed, nowhere in the FAC does Plaintiff allege that Miano arrested him.  However, even if the FAC were to be read to include a false arrest claim against either or both Defendants, this claim fails because Defendants had, at the very least, arguable probable cause to arrest Plaintiff following each of Varney's depositions.[7]

On June 24, 2010, Varney signed a sworn statement indicating that Hudson drove his blue and white SUV down Varney's private driveway toward Varney's home, that as Hudson's car approached, Varney waved his arms and shouted for Hudson to avoid Varney's dog, and that the car "swerved around [Varney's] dog nearly hitting it."  (Pl.'s Exs., at 36.)  Varney walked toward the moving vehicle to identify the driver, and saw it was Hudson.  (*Id.*)  Varney further swore that the "event was extremely unnerving and caused [him] to be concerned for [his] personal well being."  Furthermore, according to Varney, the "property [was] clearly posted," Hudson had no permission to access or enter the land, and Hudson had been repeatedly advised of this.  (*Id.*)  On January 28, 2011, Varney swore to a second deposition, in which he stated that he "witnessed a vehicle" cross onto his property and "proceed through the back portion of [his]

---

[7] Although it appears that any false arrest claim Plaintiff brings relates to his March arrest related to the second set of charges brought by Mergendahl, because it is somewhat unclear, the Court will assess probable cause to arrest following each of Varney's depositions.

property," and that "the operator" had been "shouting as he drove." (Pl.'s Exs., at 54.) Varney swore that he "believe[d] without doubt [that] the operator [was] [Plaintiff,] as [Plaintiff] [had] exhibited this course of action on numerous occasions." (*Id.*) At the time, there was an active order of protection in place, requiring Plaintiff to stay away from Varney's home and business. (*Id.* at 39.)[8]

"An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity." *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995); *see also Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) ("When information is received from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubt as to the person's veracity . . . ." (citation omitted)); *Williams v. City of New York*, No. 14-CV-5123, 2015 WL 4461716, at *4 (S.D.N.Y. July 21, 2015) ("A police officer may have probable cause to arrest and charge a suspect based on information provided by a single victim or witness, unless circumstances raise doubts as to the person's veracity." (internal quotation marks omitted)); *Blythe v. City of New York*, 963 F. Supp. 2d 158, 182 (E.D.N.Y. 2013) (noting that "[i]nformation provided by an identified citizen accusing another individual of committing a specific crime is sufficient to provide the police with probable cause to arrest," and therefore

---

[8] Because Varney's sworn statements were attached to the FAC, the Court may consider them in deciding the Motion. *See, e.g., Kalyanaram v. Am. Ass'n of Univ. Professors at N.Y. Inst. of Tech., Inc.*, 742 F.3d 42, 44 n.1 (2d Cir. 2014), *cert. denied,* 135 S. Ct. 677 (2014) ("In ruling on a 12(b)(6) motion, . . . a court may consider the complaint as well as any written instrument attached to the complaint as an exhibit or any statements or documents incorporated in it by reference." (alterations and internal quotation marks omitted)); *Masciotta v. Clarkstown Cent. Sch. Dist.*, —F. Supp. 3d—, 2015 WL 5730629, at *5 (S.D.N.Y. Sept. 30, 2015) (same).

granting the defendants' motion for summary judgment because "an identified

individual . . . called 911 and reported" the plaintiff's alleged wrongdoing).  Indeed, "the veracity

of citizen complainants who are the victims of the very crime they report to the police is

assumed."  *Conte*, 2010 WL 3924677, at *13 (alterations and internal quotation marks omitted).

Moreover, the victim's credibility is further bolstered, as happened here, when the statements to

the police are sworn on penalty of perjury.  (*See* Pl.'s Exs., at 36, 54 (Varney's Depositions)

(stating that "[i]n a written instrument, any person who knowingly makes a false statement which

such person does not believe to be true has committed a crime under the laws of the state of New

York punishable as a Class A misdemeanor," and "[a]ffirm[ing] [the statement] under penalty of

perjury")).  *See also Panetta v. Crowley*, 460 F.3d 388, 397 (2d Cir. 2006) ("[The affidavit and

statement produced by witnesses] both contain acknowledgments that any false statements made

to [the state trooper] subjected the authors to criminal penalties.  This exposure to criminal

penalties is an additional factor supporting the reasonableness of [the trooper's] reliance on [the

witnesses'] complaints."); *United States v. Hernandez*, 85 F.3d 1023, 1028 (2d Cir. 1996)

(holding, in assessing probable cause, that "the [informant's] allegations are significantly more

reliable . . . because the [informant] testified under threat of the criminal sanction for perjury");

*Weiner v. McKeefery*, 90 F. Supp. 3d 17, 30 (E.D.N.Y. 2015) ("The Second Circuit has

recognized that when a sworn statement contains an acknowledgment that any false statement

made to police would subject the author to criminal penalties, that statement serves as an

additional indici[um] of reliability.").

Here, the purported victim, Varney, provided sworn information that, in both occasions,

Plaintiff knowingly entered Varney's property without permission.  In the first deposition,

Varney described how he saw Hudson as he drove past him.  (Pl.'s Exs., at 36.)  In the second

deposition, Varney did not assert that he saw Hudson himself as he drove by. (*See id.* at 54.) However, the Court concludes that Varney's deposition included adequate details to allow officers of reasonable caution to conclude that there was probable cause to arrest. In particular, Varney stated that "without doubt" the driver of the vehicle on Varney's property was Plaintiff, and he provided enough details of identifying conduct—that the person was driving, the path which the operator drove, and the fact that the operator was shouting as he drove—to warrant reasonable officers to trust Varney's conclusion that he was sure that this was Hudson because Hudson had engaged in this course of conduct on numerous occasions. (*Id.*) Moreover, Plaintiff alleges no facts that would suggest that there was any reason whatsoever for the officers to doubt Varney's credibility, reliability, or truthfulness.

With respect to Plaintiff's assertion that he had a defense to the charges—that he had adversely possessed a portion of Varney's land—Plaintiff fails to allege sufficient facts to undercut a finding of arguable probable cause. "[A] police officer is generally not required to investigate an arrestee's claim of innocence;" however "'under some circumstances, a police officer's awareness of the facts supporting a defense can eliminate probable cause.'" *Conte*, 2010 WL 3924677, at *14 (quoting *Jocks*, 316 F.3d at 135). Nevertheless, "[o]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to eliminate every theoretically plausible claim of innocence before making an arrest." *Widget*, 2013 WL 1104273, at *6 (alterations and internal quotation marks omitted). "The crucial question then, is whether the arresting officers deliberately disregarded facts known to them which established" a defense. *See id.* Here, Plaintiff fails to allege any facts tending to show that Defendants *knew* that Plaintiff had a potential defense, i.e. that Plaintiff claimed to have adversely possessed the land in question, at the time of Plaintiff's arrest.

Therefore, based on the sworn statements from Varney, the purported victim of the crime, and in the absence of any evidence tending to show Varney's unreliability or any evidence that Defendants knew that Hudson had a potential defense, Defendants had at least arguable probable cause to arrest Hudson for trespassing following the June 24, 2010 and the January 28, 2011 depositions from Varney.[9]  The Court further notes that it is irrelevant that Plaintiff ultimately was acquitted of three of the four charges brought against him.  (Pl.'s Exs., at 53, 58; FAC 3–4.) *See Alvarez v. County of Orange*, 95 F. Supp. 3d 385, 400 (S.D.N.Y. 2015) ("[N]either the ultimate disposition of an action, nor the crimes eventually charged, are dispositive of a probable cause determination. . . . Instead, . . . the inquiry is whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest [the] [p]laintiff." (alterations and internal quotation marks omitted)); *Garnett v. City of New York*, No. 13-CV-7083, 2014 WL 3950904, at *6 (S.D.N.Y. Aug. 13, 2014) ("[P]robable cause to arrest is a complete defense to a claim of false arrest.  This is true even where a person is ultimately acquitted, because probable cause to arrest constitutes justification." (citation omitted)); *Douglas v. City of New York*, 595 F. Supp. 2d 333, 340 (S.D.N.Y. 2009) ("Probable cause to arrest is a complete defense to an action for false arrest, even where a person is ultimately acquitted, because it constitutes justification."); *Little v. City of New York*, 487 F. Supp. 2d 426, 438 (S.D.N.Y. 2007) (same).  Therefore, to the extent Plaintiff seeks to raise a false arrest claim, Defendants' Motion To Dismiss is granted, both because Plaintiff fails to state a plausible claim and because the existence of arguable probable cause entitles Defendants to qualified immunity.

---

[9] As noted above, "it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." *Jaegly*, 439 F.3d at 154.  Additionally, a violation of N.Y. Penal Law § 140.05 may warrant an arrest, rather than merely a citation or a summons.  *See Caidor v. Harrington*, No. 05-CV-297, 2009 WL 799954, at *1 & n.1 (N.D.N.Y. Mar. 24, 2009).

### 2.  Rifle-Related Claims

The Court previously dismissed with prejudice any claims Plaintiff alleged against Mergendahl regarding the seizure of Plaintiff's rifles, (Sept. 29, 2014 Opinion 37); therefore the Court will only address the adequacy of the rifle-related claims against Miano.  As to Miano, the Court reads Plaintiff's FAC as asserting that Miano's allegedly wrongful signing of the informations set in motion a chain of events that eventually resulted in the confiscation of Plaintiff's rifles, and that Miano is therefore responsible for such action.  Defendants construe this as a malicious prosecution claim, whereby the damages include the seizure of the rifle, and move to dismiss.

### a.  Malicious Prosecution Claim

The Court agrees that this claim could potentially be cognizable as a malicious prosecution claim.  Under New York law, "[t]he elements of a malicious prosecution claim . . . are '(1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, and (4) that the prosecution was terminated in the plaintiff's favor.'"  *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000) (quoting *Posr v. Court Officer Shield # 207*, 180 F.3d 409, 417 (2d Cir. 1999)).  "In order to allege a cause of action for malicious prosecution under § 1983, [Plaintiff] must assert, in addition to the elements of malicious prosecution under state law, that there was (5) a sufficient post-arraignment liberty restraint to implicate [] [P]laintiff's Fourth Amendment rights."  *Id.*  "Because lack of probable cause is an element of a malicious prosecution claim, the existence of probable cause is a complete defense to a claim of malicious prosecution."  *Stansbury v. Wertman*, 721 F.3d 84, 94–95 (2d Cir. 2013) (internal quotation marks omitted)).  Moreover, "if probable cause existed at the time of arrest, it

25

continues to exist at the time of prosecution unless undermined by the discovery of some

intervening fact."  *Costello v. Milano*, 20 F. Supp. 3d 406, 415 (S.D.N.Y. 2014) (citations and

internal quotation marks omitted).  Further, as discussed above, because probable cause is a

complete defense to malicious prosecution, a defendant is entitled to qualified immunity if

"arguable probable cause" exists.  *See Cerrone*, 246 F.3d at 202.

Plaintiff argues that it was Miano's charges that allowed Justice Acker to issue the order

of protection and that Varney's deposition was insufficient to support a charge of harassment.

(FAC 3, 6.)  However, a malicious prosecution claim on either of Miano's charges would fail.

First, Plaintiff was found guilty of Miano's criminal trespass charge, (*see* Pl.'s Exs., at 53), and

thus Plaintiff cannot bring a malicious prosecution claim related to that charge, *see Fleming v.

City of New York*, No. 10-CV-3345, 2014 WL 6769618, at *5 (S.D.N.Y. Nov. 26, 2014) ("[N]o

claim for false arrest or malicious prosecution may be brought under Section 1983 if the plaintiff

was convicted of the offense for which he was arrested."); *see also Cameron v. Fogarty*, 806

F.2d 380, 387 (2d Cir. 1986) ("[T]he common-law rule, equally applicable to actions asserting

false arrest, false imprisonment, or malicious prosecution, was and is that the plaintiff can under

no circumstances recover if he was convicted of the offense for which he was arrested."); *Corsini

v. Brodsky*, No. 13-CV-2587, 2015 WL 3456781, at *5 (S.D.N.Y. May 27, 2015) (finding that

the plaintiff's claim for malicious prosecution must fail because the plaintiff was convicted of

one of the charges for which he was arrested); *Bowles v. State*, 37 F. Supp. 2d 608, 611

(S.D.N.Y. 1999) ("No claim may be brought pursuant to 42 U.S.C. § 1983 for false arrest or

malicious prosecution if the plaintiff was convicted of the offense for which he was arrested.").

Additionally, Plaintiff has provided no basis to believe that the probable cause that existed at the

time of his arrest for trespass had been somehow subsequently undermined, such that it no longer existed for purposes of his malicious prosecution claim.  *See Costello*, 20 F. Supp. 3d at 415.

With respect to the second charge, the Court holds that Miano had arguable probable cause to charge Plaintiff with harassment in the second degree based on Varney's first criminal complaint.  Miano charged Plaintiff with § 240.26 of the N.Y. Penal Law, which provides that "[a] person is guilty of harassment in the second degree when, with intent to harass, annoy[,] or alarm another person . . . [h]e or she engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose."  N.Y. Penal Law § 240.26.  As discussed above with respect to the false arrest claim, as the purported victim of a crime, and having signed a statement under penalty of perjury, Varney's statement is presumed to be true.  Furthermore, as also discussed above, Plaintiff alleges no facts tending to show that Miano knew or should have known that Varney was unreliable or that Plaintiff had a defense to the charge.  According to Varney's statement, Plaintiff drove across Varney's property and swerved around Varney's dog, nearly hitting it, even with Varney "wav[ing] [his] arms and shout[ing] to avoid the dog."  (Pl.'s Exs., at 36.)  Furthermore, Varney attested to the fact that "[the] event was extremely unnerving and caused [him] to be concerned for [his] personal well being."  (*Id.*)  Finally, Varney attested that the property is clearly posted and that he, as well as the property manager, had repeatedly advised Plaintiff that he had no permission to access or enter the Varneys' land.  (*Id.*)  This information was sufficient to provide Miano with at least arguable probable cause to charge Plaintiff with harassment as, according to the evidence in Miano's possession, Plaintiff engaged in a course of conduct that alarmed Varney and served no legitimate purpose, and the requisite intent element could reasonably have been inferred from Plaintiff's conduct.  *See Lynn v. State*, 822 N.Y.S.2d 600, 602 (App. Div. 2006) ("The intent to

27

annoy, harass, or alarm . . . may be inferred from the totality of this conduct."); *People v. Hoffstead*, 905 N.Y.S.2d 736, 740 (Sup. Ct. 2010) ("An intent to 'harass, annoy[,] or alarm' may be inferred from the conduct of a defendant . . . ."). Thus, any malicious prosecution claim based on the harassment charge is dismissed, again both for failure to state a claim and because Miano is entitled to qualified immunity.

<u>b.  Other Rifle Claims</u>

To the extent that Plaintiff raises a Second Amendment claim against Miano for taking action that led to the imposition of the order of protection requiring him to turn in his guns and to not acquire other guns or firearms, this claim is dismissed. Miano, acting with probable cause, as discussed above, brought a harassment charge against Plaintiff. Justice Acker found good cause to issue a temporary order of protection under N.Y. Criminal Procedure Law § 530.13, which order required Plaintiff to turn in his guns and prevented him from acquiring new guns or firearms. (*See* Pl.'s Exs., at 39.)

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." The right of an individual to keep and bear arms has been affirmed by the Supreme Court in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742 (2010). This right, however, is not unlimited, *Heller*, 554 U.S. at 626, and within the Second Circuit, "the contours of [the right to bear arms] are as of yet underdeveloped and ill-defined," *Doutel v. City of Norwalk*, No. 11-CV-1164, 2013 WL 3353977, at *23 (D. Conn. July 3, 2013). Indeed, the case law in the Second Circuit addressing the relationship between N.Y. Criminal Procedure Law § 530.13 and the Second Amendment is particularly sparse, although there is at least some case law addressing whether the seizure of weapons pursuant to a

28

temporary order of protection violates the Second Amendment. In *Estes-El v. Dumoulin*, No. 06-CV-2528, 2012 WL 1340805 (E.D.N.Y. Apr. 18, 2012), the plaintiff was charged with the same harassment charge as was Plaintiff in the instant case. *See id.* at *1. As a result, a judge issued a temporary order of protection that ordered the plaintiff to surrender all weapons. *Id.* at *1, *6. There, the court dismissed the Second Amendment claim the plaintiff brought against the complainant, holding that there was no basis for holding the complainant responsible for the issuance of the order of protection, reasoning that the "Second Amendment [did] not prohibit the state's right to enforce a weapons restriction and there [was] no suggestion that the underlying statutes [were] unconstitutional." *Id.* at *6 (internal quotation marks omitted). Similarly, here, there is no allegation that § 530.13 is unconstitutional nor is there any plausible allegation that Miano was personally responsible for the issuance of the temporary order of protection as the statute under which the order was issued requires that the court must find good cause to issue such an order. *See* N.Y. Crim. Proc. Law § 530.13(1). Likewise, in another case, a court in this district concluded that the plaintiff's Second Amendment right was not violated where the police department seized the plaintiff's handguns pursuant to a temporary order of protection that the village justice entered after the plaintiff was arrested on a charge of second-degree menacing. *See McGuire v. Vill. of Tarrytown*, No. 08-CV-2049, 2011 WL 2623466, at *3, *7 (S.D.N.Y. June 22, 2011). Consequently, the seizure of Plaintiff's weapons here, too, would fail to implicate the rights guaranteed under the Second Amendment.

Even if there was a way to hold Miano responsible for the issuance of the protective order, he would nonetheless be entitled to qualified immunity on that claim. As previously noted, an officer is entitled to qualified immunity if he or she has not violated a clearly established statutory or constitutional right. *Pearson*, 555 U.S. at 231. The Second Circuit has

set forth three criteria of a clearly established right: "(1) the law is defined with reasonable

clarity, (2) the Supreme Court or the Second Circuit has recognized the right, and (3) a

reasonable defendant would have understood from the existing law that his conduct was

unlawful." *Schubert*, 775 F. Supp. 2d at 702 (quoting *Luna*, 356 F.3d at 490).  Miano would be

entitled to qualified immunity because the law is not defined with reasonable clarity, and a

reasonable officer would not have understood that he was violating Plaintiff's Second

Amendment rights by bringing a harassment charge based on probable cause that led to the

issuance of an order of protection, especially since no court has held that such orders of

protection are unlawful.  *Cf. Kachalsky v. Cty. of Westchester*, 701 F.3d 81, 89 (2d Cir. 2012)

("[W]e do not know . . . the scope of [the Second Amendment] right beyond the home and the

standards for determining when and how the right can be regulated by a government.");

*McGuire*, 2011 WL 2623466, at *1, *7 (finding that the police department's seizure of the

plaintiff's handgun pursuant to a temporary order of protection did not violate Second

Amendment right to bear arms).

        Finally, to the extent Plaintiff has alternative claims based on the removal and continued

possession of his rifles, for example for inadequate pre- or post-deprivation remedies or

unreasonable seizure under the Fourth Amendment, Plaintiff does not assert these claims against

Defendants because there is no allegation that either Miano or Mergendahl took Plaintiff's guns,

is holding Plaintiff's guns, or is responsible for the amount of process Plaintiff received.  *See,*

*e.g.*, *Kneitel v. Danchuk*, No. 04-CV-0971, 2007 WL 2020183, at *7 (E.D.N.Y. July 6, 2007)

(noting that "personal involvement of defendants in alleged constitutional deprivations is a

prerequisite to an award of damages under § 1983" (internal quotation marks omitted) (quoting

*Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986)). Therefore, any claim asserted by Plaintiff against Miano based on the removal of his firearms is dismissed.

### III. Conclusion

For the foregoing reasons, Defendants' Motion To Dismiss Plaintiff's claims for false arrest against Miano and Mergendahl and for Miano's involvement in the seizure of Plaintiff's rifles is granted with prejudice.[10] The Clerk of the Court is respectfully directed to terminate the pending Motion. (*See* Dkt. No. 100.)

SO ORDERED.

DATED:      November 14, 2015
            White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[10] Because this is Plaintiff's *Fourth* Amended Complaint, dismissal with prejudice is appropriate. *See, e.g., Gomes v. Avco Corp.*, 964 F.2d 1330, 1336 (2d Cir. 1992) ("The district court was well within its discretion in denying leave to amend a fourth time."); *Harris v. Westchester Cty. Med. Ctr.*, No. 08-CV-1128, 2011 WL 2637429, at *4 (S.D.N.Y. July 6, 2011) ("As [the plaintiff] has already amended his complaint three times after being informed of the deficiencies in his original complaint . . . , dismissal with prejudice is appropriate at this stage of the litigation."); *Treppel v. Biovail Corp.*, No. 03-CV-3002, 2005 WL 2086339, at *12 (S.D.N.Y. Aug. 30, 2005) (granting motion to dismiss with prejudice where the "plaintiff has already had two bites at the apple and they have proven fruitless"); *Rozsa v. May Davis Grp., Inc.*, 187 F. Supp. 2d 123, 132 (S.D.N.Y. 2002) *aff'd sub nom. Rozsa v. SG Cowen Sec. Corp.*, 165 F. App'x 892 (2d Cir. 2006) (dismissing the plaintiff's amended complaint with prejudice because it was the plaintiff's "second effort to state a claim against [the defendant]").

31